In re CAL–INLAND, INC., Debtor.

Bankruptcy No. 3–90–5384.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 15, 1991.

Faye Knowles, Fredrikson & Byron, P.A., Minneapolis, Minn., for debtor.

Andrew J. Schmid, Office of the U.S. Trustee, Minneapolis, Minn., for U.S. Trustee.

---

**ORDER DENYING DEBTOR'S MOTION FOR AUTHORITY TO PAY ADDITIONAL, POST–PETITION RETAINER TO CHAPTER 11 COUNSEL**

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 11 case came on before the Court on December 10, 1990, for hearing on Debtor's motion for authority to perform in accordance with a pre-petition agreement with its Chapter 11 counsel, under which Debtor would make periodic post-petition retainer payments to counsel. Faye Knowles appeared on the motion. The U.S. Trustee appeared by his attorney, Andrew J. Schmid. Upon the moving documents, the U.S. Trustee's response thereto, and the record made at hearing, the Court denies the motion.

Debtor is a regional trucking concern which filed a voluntary petition under Chapter 11 on November 15, 1990. Fredrikson & Byron, P.A. ("Fredrikson") was its counsel of record for the filing. Debtor submitted an application for approval of its employment of Fredrikson to the office of the U.S. Trustee pursuant to LOC.R. BANKR.P. (D.Minn.) 122(h). In the application, Debtor and Fredrikson disclosed:

1.  that, sometime in advance of the bankruptcy filing, Debtor had paid Fredrikson an advance retainer of $26,500.00, of which the sum of $7,361.12 had been applied to attorney fees accrued during the month immediately preceding the bankruptcy filing;

2.  that and Debtor and Fredrikson considered the balance of $19,138.88 as "a bankruptcy retainer"; and

3.  that, as an additional term of its retention of Fredrikson, Debtor had agreed to pay the sum of $5,000.00 per month to Fredrikson, beginning December 1, 1990, "to be held in an interest-bearing account with the initial retainer, for application to attorneys' fees and costs as they are allowed by the Court upon [Fredrikson's] periodic application." Debtor and Fredrikson further agreed that the sum to be held by Fredrikson in trust would not exceed the sum of $50,000.00 at any time.

The U.S. Trustee did not object to Debtor's interim employment of Fredrikson, but withheld recommendation on the condition of the long-term retention which required Debtor to make periodic post-petition retainer payments without notice, hearing, and prior authorization for each payment.

In response, Debtor brought on the present motion. Nominally casting the motion as one under 11 U.S.C. § 363(b)(1),[1] Debtor requests authority to use its post-petition revenues[2] to make the additional retainer payments. By doing so, however, Debtor and Fredrikson seek the Court's ratification of the retainer agreement, via the entry of an order approving Debtor's long-term employment of Fredrikson.

In their arguments,[3] Debtor and the U.S. Trustee have focused on two issues.

The primary issue is that advanced by Debtor and Fredrikson: whether a general grant of court approval to terms of retention like this would offend the principles of §§ 327–328, or whether, in fact, it would further the goals of bankruptcy reorganization, by giving Chapter 11 debtors greater latitude in their choice of counsel. On this issue, the language of the Bankruptcy Code affords some support for both sides.

As Fredrikson points out, the proposed terms of retention are contemplated by the provisions of 11 U.S.C. § 328(a)[4], or at least are not prohibited by them.

On the other hand, as has been noted in too many decisions to fully cite, professionals retained by a bankruptcy estate may obtain allowance and payment of compensation only in accordance with 11 U.S.C. §§ 330[5] and 331[6]. *See, e.g., In re Knudsen Corp.,* 84 B.R. 668, 671 (9th Cir.BAP 1988); *In re Dandy Lion Inns of America,* 120 B.R. 1015, 1017 (D.Neb.1990); *In re Shelly's, Inc.,* 91 B.R. 803, 807 (Bankr.S.D. Ohio 1988).

As the U.S. Trustee notes, the question of whether to even permit the suggested procedure is much more weighty than Fredrikson acknowledges. Fredrikson argues at length that denying Chapter 11 debtors and counsel the ability to make such fee arrangements would have a detrimental impact on the availability and/or effectiveness of Chapter 11 relief to certain sorts of business debtors. The drawing of such a conclusion is, obviously, a policy determination. Section 328(a)'s reference to "any reasonable terms and conditions of

---

1. Section 363(b)(1) provides:
   The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. As a debtor in possession under Chapter 11, Debtor has the rights and powers, and is subject to the duties and obligations, of a trustee in bankruptcy. 11 U.S.C. § 1107(a).

2. Debtor's post-petition revenues are property of its Chapter 11 estate. *See* 11 U.S.C. § 541(a)(7).

3. Neither counsel briefed the issue presented.

4. In pertinent part, § 328(a) provides:
   The trustee, ... with the court's approval, may employ or authorize the employment of a professional person under section 327 ... of [title 11], ... on any reasonable terms and conditions of employment including on a retainer, on an hourly basis, or on a contingent-fee basis.

5. In pertinent part, 11 U.S.C. § 330(a) provides:
   After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of [title 11], the court may award to ... a professional

person employed under § 327 ... of [title 11], or to the debtor's attorney—
   (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title [11 U.S.C. § 101 et seq.]; and
   (2) reimbursement for actual, necessary expenses.

6. In pertinent part, 11 U.S.C. § 331 provides:
   ... [A] debtor's attorney, or any professional person employed under section 327 or 1103 of [title 11] may apply to the court not more than once every 120 days after an order for relief in a case under [title 11], or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of [title 11]. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

employment" reflects the congressional intent to allow the courts to make this determination. However, before a court can defensibly draw a conclusion with as many potential ramifications as this one, it must have some sort of record of evidence and/or experience in other cases upon which to base it.

Fredrikson has made no such record. This Court's experience does not, as Fredrikson would have it, make the conclusions undeniable; it does not even strongly support it. There is simply no indication, of record or otherwise, that the tacit discouragement of post-petition retainers has prevented business debtors in need of Chapter 11 relief from retaining able counsel, or from obtaining confirmation of reorganization plans when those debtors were otherwise capable of bankruptcy rehabilitation. Nor is there any evidence that the policy has frustrated these goals by "preventing" debtors from hiring particular law firms which set certain retainer requirements which cannot be met absent post-petition payment of that retainer.

As the U.S. Trustee notes, the customary practice for retainers and attorney fees used in this District since the adoption of the Code has entailed the debtor's posting of a single pre-petition retainer; counsel's retention of that retainer in trust until it receives court authority to draw on it to satisfy post-petition allowances of compensation and expenses; and, after exhaustion of the retainer, the satisfaction of further allowances from the debtor's post-petition income. This system has been relatively simple to administer and oversee by the U.S. Trustee and the Court. The advantage conferred by this simplicity is substantial; the limited resources of the U.S. Trustee are thus not diverted to monitoring such arrangements, from other tasks more central to the policing of the integrity of bankruptcy administration, and the Court's attentions are more available to matters involving substantive legal issues in cases and proceedings. The standard practice embodies inherent safeguards against manipulation by counsel, who may be in the most unique position to exercise undue control over a vulnerable debtor's post-petition revenues.[7] Finally, the practice firmly accords with the undeniable premise that a Chapter 11 case is not to be prosecuted solely, or even partially, as an instrumentality to generate work and fees for counsel who are employed by an entity with fiduciary duties to the estate.

Whether it is admitted or not, the real object of this proposal is the reallocation of the risk of the failure of the reorganization effort, and of the insufficiency of remaining assets to satisfy administrative-expense claims. The proponents err in not recognizing two things.

First, every other constituency in a Chapter 11 case is at pecuniary risk in the continuation of a reorganization case, to degrees which usually are equal to or greater than those borne by a debtor's counsel. Even given the adequate protection requirements of the Code, secured creditors' interests in the collateral retained by a financially-distressed debtor are always in jeopardy to some degree, often substantial. Unsecured creditors' rights to share in the unencumbered value of estate assets are subject to substantial erosion by the accrual of post-petition interest on oversecured claims, by post-petition operating losses, by fraud or conversion on the part of the debtor, or other factors. Equity security holders, who are at the lowest priority in consideration and distribution anyway, can find the present or potential value of their investment destroyed by the foundering of a reorganization.

---

**7.** This remark is *not* a comment on either the proposal at bar, or the parties making it. The proposal at bar, however, is advanced on policy grounds, and its adoption would invariably lead to proposals in other cases which would even further erode past practice; thus, given the precedential effect of this ruling, the possibility of intentional abuse must be considered, even though the record in this case is entirely devoid of evidence of it. Other courts have shared this concern for the "slippery slope" in just this context. *See, e.g., In re Shelly's,* 91 B.R. at 807.

Debtors' counsel, of course, can see their financial investment in the case—the value of their time, services, and advice—similarly wither in value, to the extent they are not compensated for post-petition services. With some justification, they can point to the fact that their efforts are directed toward the preservation of the estate, supporting a claim to a senior right to receive post-petition assets. The attributes of this senior right, however, are already delineated in the Code: 11 U.S.C. § 331 (permitting application, allowance, and payment of counsel's claims on an interim basis, even before the fruition of the reorganization effort, and before distribution on account of pre-petition claims); §§ 503(b)(2) and 507(a)(1) (according first-priority status to allowed claims for attorney compensation); § 1129(a)(9)(A) (allowing the attorney-claimant to insist on payment in full on the effective date of the plan); and § 726(b) (according Chapter 11 attorney-fee claims priority administrative-expense treatment in the administration of a post-conversion Chapter 7 case, subordinate only to Chapter 7 administrative expenses). The Courts have little business in creating new protections for debtor's counsel—whose involvement and "investment" in a Chapter 11 case, unlike that of creditors, is completely voluntary. Judicial approbation of devices which divert even more property of the Chapter 11 estate to attorneys and other professionals unduly tips the pre-existing balance of benefits among the constituencies to the case, and would lend credence to sensationalistic accusations that Chapter 11 is nothing more than a "feast for lawyers."

Second, the standard local practice for fees and retainers embodies an allocation of that risk which balances these constituencies' competing interests, and which can, to some extent, properly constitute a regulatory threshold for the invocation of Chapter 11 remedies. A debtor considering Chapter 11 may not be able to produce a cash retainer large enough to satisfy specialist counsel's requirements, and may not be able to convince counsel that its post-petition fortunes will provide sufficient assurance of compensation. Simple economics—including the prevailing market economics of the practice of law—are saying something to that debtor about its suitability for bankruptcy reorganization. Contrary to what counsel argues, the issue is not one of preserving the debtor's right to a choice of counsel; whether one likes it or not, a client's ability to engage particular counsel hinges entirely on the client's ability to meet the attorney's requirements for compensation and security. This is—and should be—no different in bankruptcy than it is outside of it. The Bankruptcy Code and Rules set certain controls and limitations over the financial aspects of the attorney-client relationship between debtors and their counsel. Given those controls' force as law, the real question is whether counsel will balance their expectations for fee security against their inclination to take particular Chapter 11 cases as a personal and professional challenge, and/or their desire to attain prominence in this practice specialty. The outcome of this balancing requires a vote of confidence in—or against—the client's ability to pull through Chapter 11.

■ In the last instance, however, this Court need not reach the issue of whether the proposed terms of retention are desirable, or permissible, under the Code. Assuming, *arguendo*, that they are, this case simply is not among those "certain rare circumstances" where the only courts which have contemplated the issue would have allowed a transfer of estate funds [8] to professionals before court allowance of the compensation to which the payment is designated. *See In re Knudsen Corp.*, 84

---

**8.** The other courts which have addressed this question have done so where the professional sought leave to accept payment and to commingle it with other revenues, before application and allowance. Fredrikson does not seek to do this; Debtor's payments would be segregated pending application and allowance, albeit "earmarked" to the satisfaction of Fredrikson's billings. The difference is not material, however; the central question is whether the estate should be allowed to part with the funds, making them at least temporarily and nominally unavailable for payment of post-petition business expenses.

B.R. at 671.[9] Under this rule, a Bankruptcy Court could authorize payment of compensation to professionals before formal allowance of that compensation upon application, "in the *rare* case where the court can make the following findings ...:

1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

3. The Court is satisfied that counsel can respond to any reassessment in one or more of the ways listed above;[10] and

4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder."

84 B.R. at 672–73 (emphasis in original). *See also In re Dandy Lion Inns of America,* 120 B.R. at 1017.

Of these four elements, Fredrikson has demonstrated only two. Its proposal to deposit the post-petition payments into trust, and to draw on that account only after allowance, affords the full security contemplated by the third element. In satisfaction of the fourth element, Fredrikson has aired its proposal before all parties in interest by serving this motion and presenting it at a hearing.

The record before the Court, however, cannot support findings to meet the first and second elements. While this case is somewhat large for the run of Chapter 11 cases in this District,[11] it is not an "unusually" large one. Debtor had 12 secured creditors, of which five were scheduled as holding security in Debtor's rolling stock; by the date of this order, it had made peace with at least seven of them, by negotiating adequate protection and/or cash collateral stipulations. While Debtor's counsel has done a commendable job in resolving these issues without extensive litigation, it cannot be said that those matters have resulted in the accrual of "an exceptionally large amount of fees," in any given month, or even over the duration of this case thus far. Nor, based upon the proceedings of record thus far, can it be said that the case portends the burgeoning of legal fees in such an amount or at such a frequency so as to put counsel at an unreasonable risk of payment absent approval of its proposal.

Neither has Fredrikson made a record to demonstrate that adhering to the statutory schedule for frequency of application under § 331 would impose an "undue hardship" on the firm. To all appearances, Fredrikson is a large and successful law firm, one which has had a well-cultivated practice representing debtors in bankruptcy reorganization cases. The pre-petition payment which Fredrikson received from Debtor was, arguably, somewhat low, lower than might be otherwise indicated by the magnitude of Debtor's debt and asset structure; however, it was certainly within the range of standard retainers for Chapter 11 cases in this District. Fredrikson already re-

---

9. At the hearing, Debtor's counsel was unable to frame any sort of standard for the grant of authority to make and receive post-petition retainer payments, other than identifying several relevant factors such as the debtor's actual ability to make the retainer payments, the relative complexity of the case, and the ability of counsel to disgorge any retainer or post-allowance disbursement if that became necessary in the later administration of the estate to accomplish parity with claims of equal priority. The Court's later research disclosed the existence of *In re Knudsen Corp.* and its progeny. Some of the factors which Debtor's counsel suggested are comparable to elements in the *Knudsen Corp.* test. Debtor's counsel did not frame any alternative test; research has not revealed alternate lines of authority; and no other standard comes to mind, despite the Court's lengthy consideration of the issue.

10. By the term "respond to any reassessment," the *Knudsen Corp.* Court referred to several different methods by which the estate could reclaim funds from counsel: the process which, in the less elegant phrase of local Minnesota parlance, is termed the "disgorgement" by counsel of previously-paid compensation out of counsel's current general revenues; the furnishing of a security bond; or the ongoing payment of only a portion of the amount of billed compensation, as a hedge against a partial "reassessment."

11. The schedules for the case note a total of $3,999,903.26 in debt (of which approximately 87 percent is scheduled as secured), and $4,539,358.00 in assets.

ceived the benefit of over one-quarter of that payment, withdrawn and applied to its fees before this Court had jurisdiction over the attorney-client relationship; during those services, counsel certainly gained familiarity with Debtor's financial situation, and must have begun to formulate strategy for the case. Fredrikson has been fully compensated for these services. While compensation for services rendered to date will likely consume most or all of the balance of the retainer, Fredrikson will be able to make its first fee application in mid-March, 1991; the healthy post-petition cashflow to which counsel points in support of this motion should enable Debtor to promptly pay any unsatisfied balance after application of the retainer.

To be sure, Fredrikson will be somewhat at risk for its compensation thereafter. This risk is not dissimilar from that borne by any law firm involved in a large, complex commercial lawsuit or other legal undertaking outside the bankruptcy context, and the mere happenstance that the case is one in bankruptcy does not justify a grant of imprimatur to special arrangements to insulate counsel from such a risk. *Compare In re Hancock–Nelson Mercantile Co., Inc.*, BKY 3–86–256, Memorandum at 5–6 (Bankr.D.Minn. September 24, 1987). In fact, the circumstance of having a debtor whose property and post-petition expenditures are subject to the strictures of 11 U.S.C. § 363 and other Code provisions tends in itself to protect counsel from some of the risk-generating circumstances inherent in an attorney-client relationship outside of bankruptcy.

The Bankruptcy Code may indeed not prohibit the Court from authorizing a Chapter 11 debtor to perform in accordance with a retainer agreement like the one proposed. However, the proponents have not satisfied the only test for obtaining such authority which the caselaw has yet developed. Nor have they suggested any other viable, alternative test which the circumstances do satisfy. Nor have they demonstrated any other cause to authorize an extraordinary departure from the long-time local practice in the retention of counsel by Chapter 11 debtors. *See In re ICS Cyber-*

*netics, Inc.*, 97 B.R. 736, 738 (Bankr.N.D. N.Y.1989) (similarly concluding that professional had failed to meet *Knudsen Corp.* test, without reaching the issue of whether the court should adopt the test); *In re Shelly's, Inc.*, 91 B.R. at 806–07 (ditto). Because they have not carried their burden, Debtor and its counsel are relegated to the standard practice—which is, after all, fully and safely in compliance with 11 U.S.C. §§ 330 and 331.

As noted earlier, the parties raised a second issue, which is a subsidiary one going to procedure alone: whether separate motion, or at least "notice and opportunity for hearing" in the sense of 11 U.S.C. § 102(1), is required before Debtor were to disburse each incremental retainer payment to Fredrikson. The disposition of the main issue renders this point moot.

IT IS THEREFORE ORDERED that Debtor's motion for authority to use its post-petition revenues out of the ordinary course for performance in accordance with its pre-petition agreement with its counsel is denied in all respects.