### In re W & W PROTECTION AGENCY, INC., Debtor.

**Bankruptcy No. 96–12222.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

July 25, 1996.

Stephen D. Lerner, W. Timothy Miller, Taft, Stettinius & Hollister, Cincinnati, OH, for Petitioner.

Donald M. Robiner, United States Trustee, Neal J. Weill, Assistant U.S. Trustee, Cincinnati, OH.

## MEMORANDUM OPINION
## AND ORDER

JEFFERY P. HOPKINS, Bankruptcy Judge.

This matter is before the Court, upon the Application of W & W Protection Agency, Inc. ("Debtor") to employ and retain Taft, Stettinius & Hollister (TS & H) as attorney for the Debtor (the "Application"). The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### FACTS

On May 2, 1996, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). The Debtor continues to operate the business and manage the property of the

estate pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code as a debtor in possession.

On May 6, 1996, the Debtor filed an Application seeking to retain the TS & H law firm. According to the Application, the Debtor seeks to employ TS & H under a "general retainer and security interest." The Application is supported by an Affidavit from Debtor's counsel, Mr. Stephen D. Lerner, a partner with the firm. The Affidavit specifies that customary billing rates for associates and partners with TS & H will apply. It also states the individual rates and impressive qualifications of those persons in the firm who will be providing legal services for the Debtor.

The Affidavit further provides that "TS & H and the Debtor have also agreed that TS & H will be paid a retainer of $5,000, $2,500 of which has already been received by TS & H and the remainder of which will be paid during the first three months of the case." Because TS & H regards that amount to be insufficient with respect to its customary retainer of $30,000, it has also asked the Court for permission to invoice the Debtor for and receive payments of interim compensation and expenses on a monthly bases, subject to a 15% holdback of all amounts paid to TS & H that are not subsequently allowed by the Court.

The "security arrangement" referred to by the Debtor in the Application is further elucidated by Mr. Lerner's Affidavit which, in relevant portion, states:

> In addition to the $5,000 retainer, the Debtor ... will request Court authority to grant TS & H a security arrangement to secure payment of any allowed fees and expenses remaining unpaid following application of the retainer. This security arrangement shall consist of: (i) a first priority lien on all of the Debtor's real property to the extent of $30,000 which would be carved out from the interests of existing lien holders in such property; and (ii) a super-priority administrative expense claim entitled to payment ahead of any claims allowed under Sections 503(b) and 507(a) of the Bankruptcy Code, in the proceeds of the Debtor's pre-petition and post-petition accounts receivable and proceeds.

Finally, the Application requests that the Court approve the above fee arrangement, *without a hearing*, subject to the right of all creditors and parties in interest to file with the Court and serve upon Debtor's counsel any written objections within 20 days of the entry of a proposed order attached to the Application.

On May 7, 1996, this Court entered an Order approving the appointment of TS & H as the attorneys for the Debtor under § 327. The Order set the remaining issues in the Application pertaining to TS & H's fee requests along with any objections thereto for hearing on May 30, 1996, following the expiration of a 20–day period for filing objections. Proper and sufficient notice of the Application and hearing was given to all known creditors and parties-in-interest in accordance with all applicable Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules and the Bankruptcy Code.

On May 24, 1996, the U.S. Trustee timely filed an objection to the Application ("Trustee's Objection"). Thereafter, on May 29, 1996, the Debtor filed its reply to the Trustee's Objection. A hearing on the Application and Trustee's Objection was conducted on May 30, 1996. None of the parties presented any witnesses or offered any evidence in support of their arguments.

The Trustee, under a very restrictive reading of §§ 327–331 of the Bankruptcy Code, strenuously objects to Debtor's Application arguing that it contravenes the established statutory procedure. Specifically, the Trustee objects to TS & H's requests for a post-petition retainer, a super-priority administrative expense, a first-priority lien on Debtor's real estate to secure payment of TS & H's fees, monthly invoicing and payment of fees without notice, hearing, and prior authorization by the Court before each payment, and the holding of the $5,000 retainer to apply towards TS & H's final fee application. No objection was filed to the appointment of TS & H as Debtor's counsel. None of the creditors listed in the schedules asserted an objec-

tion during the 20–day objection period and none entered an appearance at the hearing.[1]

On June 6, 1996, Fifth Third Bank of Southern Ohio ("Fifth Third"), a secured creditor, filed a Memorandum in Support of the Objection of the United States Trustee as it Pertains to Security Arrangement for Fees to be Paid to Taft, Stettinius & Hollister. On June 10, 1996, TS & H filed a Reply opposing Fifth Third's Objection on both procedural and substantive grounds.

The issue presented in this case concerns whether the Court should, or is in fact, authorized to approve the fee arrangement offered by the Debtor towards retention of the TS & H law firm to represent it in this Chapter 11, pursuant to Bankruptcy Code §§ 328,[2] 330,[3] and 331.[4]

At the hearing, counsel for Debtor stated that this Chapter 11 petition was filed under exigent circumstances to prevent the IRS from levying upon Debtor's real property. The Debtor's attorney· further indicated that it is improbable that Debtor could have found experienced counsel willing to risk representing it without payment of a more substantial monetary retainer. Indeed, according to Mr. Lerner, before TS & H agreed to provide representation under the terms of the current compensation proposal, Debtor considered but ultimately decided against taking the case to another law firm partly because Debtor was unable to pay a $25,000 retainer required by that firm.

Mr. Lerner maintains that business debtors in need of Chapter 11 relief will find it more difficult to find able counsel to represent them, or these debtors will be prevented from selecting the particular law firm of their choice which have established retainer requirements that cannot be met absent approval of the "flexible" fee agreement sought under the Application. Mr. Lerner also contends that refusal by this Court to sanction the agreement will result in discrimination against Chapter 11 debtor's attorney's of the sort specifically addressed by the 1978 Amendments to Bankruptcy Code sections 327–331.

During the hearing on the Application, Mr. Lerner stated that this was a relatively small case, there are only 30 creditors listed in the Schedules, that he expects the case to result in a successful reorganization under Chapter 11, and that TS & H will remain in the case regardless of whether the Court approves the Application, in whole or in part.

## DISCUSSION

A. *Super-priority Administrative Expense Claim Under § 364(c)(1).*

■ Under the alleged "security arrangement" of the Application the Debtor seeks to have countenanced a compensation agreement whereby its attorneys could claim a super-priority administrative expense to the extent of $30,000 in the proceeds of the Debtor's pre-petition and post-petition receivables. The Debtor argues that the Court has

1. The Court recognizes its inherent duty and responsibility to review fee applications *sua sponte* even if no opposition is raised. *In re Busy Beaver Bldg Ctrs, Inc.*, 19 F.3d 833 (3rd Cir. 1994); *In re Beyer*, 169 B.R. 652 (Bankr. W.D.Tenn.1994).

2. In pertinent part, 11 U.S.C. § 328(a) provides: The trustee, ... with the court's approval, may employ or authorize the employment of a professional person under section 327 ... of [title 11], ... on any reasonable terms and conditions of employment including on a retainer, on an hourly basis, or on a contingent fee basis.

3. In pertinent part, 11 U.S.C. § 330(a) provides: After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to ... a professional person employed

under section 327 or 1103–(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses.

4. In pertinent part, 11 U.S.C. § 331 provides: A ... debtor's attorney, or any professional person employed under section 327 or 1103 of [title 11] may apply to the court not more than once every 120 days after an order for relief in a case under [title 11], or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of [title 11]. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

discretion to adopt this payment procedure pursuant to § 328(a)'s reference to compensation of professionals under "any reasonable terms and conditions of employment." The Trustee opposes the granting of a super-priority claim in favor of TS & H. The Trustee argues that there is nothing in the Code which authorizes a super-priority lien to guarantee professional fees.

In essence, Debtor asserts a position that would elevate its attorney's right to compensation and reimbursement for expenses to a position senior to that of any other administrative expense incurred by the estate, including other costs of preserving the estate and taxes. See § 507(a).

In rejecting similar arguments, the Court in, *In re Cal–Inland, Inc.*, 124 B.R. 551 (Bankr.D.Minn.1991), determined that § 328(a) did not give it the sort of judicial discretion being asked for in this case, namely the ability to reallocate the risk of failure of the reorganization effort and the insufficiency of the remaining assets to satisfy administrative expense claims. In its order denying debtor's motion for authority to pay additional, post-petition retainer amounts, the court summarized the statutory safeguards currently available to attorneys representing Chapter 11 debtors:

> Debtors' counsel ... can point to the fact that their efforts are directed toward the preservation of the estate, supporting a claim to a senior right to receive post-petition assets. The attributes of this senior right, however, are already delineated in the Code: 11 U.S.C. § 331 (permitting application, allowance, and payment of counsel's claims on an interim basis, even before the fruition of the reorganization effort, and before distribution on account of pre-petition claims); §§ 503(b)(2) and 507(a)(1) (according first-priority status to allowed claims for attorney compensation);

§ 1129(a)(9)(A) (allowing the attorney-claimant to insist on payment in full on the effective date of the plan); and § 726(b) (according Chapter 11 attorney-fee claims priority administrative-expense treatment in the administration of a post-conversion Chapter 7 case, subordinate only to Chapter 7 administrative expenses).

The Court went on to admonish that:

> The Courts have little business in creating new protections for debtor's counsel— whose involvement and "investment" in a Chapter 11 case, unlike that of creditors, is completely voluntary. Judicial approbation of devices which divert even more property of the Chapter 11 estate to attorneys and other professionals unduly tips the pre-existing balance of benefits among the constituencies to the case, and would lend credence to sensationalistic accusations that Chapter 11 is nothing more than a "feast for lawyers."

*Cal–Inland*, 124 B.R. at 554.

Under § 1129(a)(9)(A), attorneys for Chapter 11 debtors certainly may agree to a different treatment of their fees than is provided in the Bankruptcy Code. Indeed, at the hearing, Mr. Lerner gave as an example another Chapter 11 case where TS & H, as creditors' counsel, and another law firm, as debtor's counsel, both agreed to payment of their fees and expenses in installments rather than insisting upon reimbursement immediately at confirmation. While it would be commendable for TS & H to be willing to work with this Debtor in the same manner, the Bankruptcy Code provides the priority, timing and application process by which TS & H is entitled to payment for its services and expenses. That TS & H opts not to accept the protection provided is not sufficient reason to provide better protection than that afforded by the Bankruptcy Code.[5]

---

5. TS & H's concerns that denial of the requested fee arrangement in situations such as the case *sub judice* will have a chilling effect on the Chapter 11 bar, perhaps, was best addressed by the court in *Cal–Inland* when it stated:

> Contrary to what counsel argues, the issue is not one of preserving the debtor's right to a choice of counsel; whether one likes it or not, a client's ability to engage particular counsel

hinges entirely on the client's ability to meet the attorney's requirements for compensation and security. This is—and should be—no different in bankruptcy than it is outside of it. The Bankruptcy Code and Rules set certain controls and limitations over the financial aspects of the attorney-client relationship between debtors and their counsel. Given those controls' force as law, the real question is

The elevation of Debtor's attorney's fees to a super-priority administrative expense senior to all others is not warranted under the circumstances of this case. Accordingly, the Debtor's request for a super-priority administrative expense claim to pay its counsel's fees and expenses under § 364(c)(1) is DENIED.

### B. Post-petition Retainer.

■ The Application also requests approval for TS & H to receive a $5,000 retainer, $2,500 of which is to be paid *post-petition* in installments over a three-month period. TS & H asserts that the total $5,000 retainer is substantially less than what is the usual and customary fee charged in this area for a similar case by any law firm. Apparently, TS & H agreed to installment payments of the post-petition retainer so that Debtor's accounts receivable would remain at sufficient levels without affecting its ability to pay other administrative obligations. Mr. Lerner argues that this post-petition retainer is reasonable and should be approved under the factors articulated in, *In re Jefferson Business Ctr. Assocs.*, 135 B.R. 676 (Bankr. D.Colo.1991). At the hearing, however, the Debtor failed to provide any evidence whatsoever in the form of records, affidavits or testimony concerning the Debtor's financial ability to meet its operating expenses while making the payments, however modest, sought under the post-petition retainer request. The Court has no reason to doubt counsel's assertions; however, statements of counsel are not part of the evidentiary record and cannot be considered as such in the Court's analysis.

The Trustee objects to the payment of any post-petition retainer insisting that courts have no flexibility under the Bankruptcy Code to allow such fee arrangements for professionals. Further, the Trustee contends that such a retainer is "simply a method to receive funds from the debtor without complying with the requirements of § 331."

■ This Court disagrees with the Trustee as to the absence of authority under the Bankruptcy Code to grant payment of post-petition retainers. *See In re Knudsen Corp.*, 84 B.R. 668 (Bankr. 9th Cir.1988). The decision whether, and in what amount to approve a retainer must be made on a case by case basis; that decision is within the sound discretion of the Bankruptcy Court. *In re Jefferson Business Ctr. Assocs.*, 135 B.R. at 679. The burden to establish that the terms and conditions of professional employment proposed in a bankruptcy case are reasonable, however, is on the moving party. *In re NBI, Inc.*, 129 B.R. 212, 219 (Bankr. D.Colo.1991). Moreover, as pointed out in *Knudsen*, post-petition retainers may be approved by courts in *"rare"* cases and only when the following criteria have been met:

1. The case is an usually large one in which an exceptionally large amount of fees accrue each month;

2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

3. The court is satisfied that counsel can respond to any reassessment ...; and

4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.[6] *Knudsen*, 84 B.R. at 672–73.

The Court recognizes and appreciates the risks associated with representing Chapter 11 debtors in cases such as this where the debtor's assets and operating budget appear to be marginal.[7] However, the Debtor fails

whether counsel will balance their expectations for fee security against their inclination to take particular Chapter 11 cases as a personal and professional challenge, and/or their desire to attain prominence in this practice specialty. The outcome of this balancing requires a vote of confidence in—or against—the client's ability to pull through Chapter 11. *Cal–Inland*, 124 B.R. at 554.

**6.** The procedure in *Knudsen* was similar to that requested in Debtor's Application in that pay-

ment of monthly invoices would be made without prior court approval. Court approval in *Knudsen* was to be obtained on a quarterly basis for monthly statements filed during the three-month period. *Knudsen*, 84 B.R. at 669–70.

**7.** Counsel indicated at the hearing that this Debtor was a long-standing business client of his firm. Moreover, the record demonstrates that TS & H relinquished a substantial pre-petition claim for attorney's fees in the amount of § 7,500. Although this was necessary for TS &

to make an appropriate showing under each of the *Knudsen* factors in order for this Court to grant approval of its request for payment of a post-petition retainer. Of the four *Knudsen* criteria listed, Debtor appears to satisfy only the last two. Under the circumstances, if the Court were to approve the payment methodology sought by the Application, the rare exception to the Code's compensation procedures, which the court articulated in *Knudsen,* clearly would swallow the general rule. *In re Shelly's, Inc.,* 91 B.R. 803, 807 (Bankr.S.D.Ohio 1988).

Based on the foregoing, the Debtor's request for a post-petition retainer is hereby DENIED. Accordingly, any post-petition funds paid to TS & H as a retainer under the Court's previous Order must be disgorged and returned to the Debtor as property of the estate.

### C. *Interim Compensation on a Monthly Basis with Provisions for a Holdback and Disgorgement.*

 The Debtor also urges the Court, under a more relaxed reading of §§ 330 and 331, to permit TS & H to bill monthly for its services, with a provision for 15% hold back of a portion of the fee and subject to disgorgement after subsequent review by the Court. The Trustee, on the other hand, argues that the Court may reduce the 120–day fee application period, but that payment cannot be made to TS & H prior to a noticed hearing and court authorization. The Debtor maintains that the position taken by the Trustee, if approved by the Court, represents a dramatic departure from the process through which debtor's attorneys have been retained in this and other districts throughout the United States. The Debtor asserts

that monthly invoicing for an attorney's fees is the rule rather than the exception in this district citing, *In re Elder–Beerman Store, Corp.,* No. 95–33643 (Bankr.S.D.Ohio filed Oct. 17, 1995); *In re Speco Corp.,* No. 95–34619, (Bankr.S.D.Ohio filed Dec. 22, 1995); *In re Amko Plastics, Inc.,* No. 95–14620 (Bankr.S.D.Ohio filed Nov. 7, 1995); *In re F & C International, Inc.,* No. 93–11688 (Bankr.S.D.Ohio filed Apr. 19, 1993); and *In re Alert Termite & Pest Control, Inc.,* No. 96–10114 (Bankr.S.D.Ohio filed Jan. 12, 1996).

In general, professionals, including attorneys, retained by the bankruptcy estate may obtain allowance and payment of compensation only in accordance with 11 U.S.C. §§ 330 and 331. Hence, attorneys may apply to the Court for reimbursement of expenses and payment of fees not more than every 120 days after an order for relief, or more often if the Court permits.

The Debtor's reliance on *Elder–Beerman* and the other cases as the standard method for payment of attorney's fees is misplaced. The case *sub judice,* unlike *Elder–Beerman, Speco* and *Amko Plastics,* is not particularly large, nor is the Court convinced that counsel will be subjected to any undue hardship if forced to wait for payment under the normal time periods prescribed under § 331.[8] In fact, Mr. Lerner stated at the hearing on the Application that he anticipates that the case will reach quick resolution contingent on the timing of the liquidation of Debtor's real estate assets. The Court notes that orderly liquidation of estate property has already begun as evidenced by the Court's Order of July 11, 1996, permitting the sale of real estate by the Debtor outside the ordinary course of business. None of the evidence

H to meet the disinterestedness test set forth in § 327, the Court acknowledges counsel's genuine concern for its client and counsel's willingness to represent this long-standing client despite Debtor's ability to muster only a modest pre-petition retainer.

8. The Court recognizes that neither *F & C International* nor *Alert Termite* is a particularly large case. However, the Court notes that the court in *F & C International* was working in an emergency situation to permit the debtor to obtain financing under § 364(c) and (d). The post-petition retainer payments to counsel for the unsecured

creditors committee and super-priority administrative expense status for counsel fees were included as part of that emergency financing arrangement. There is no emergency in the case *sub judice.* In addition, before authorizing the financing arrangement, the *F & C International* court found that creditors were adequately protected. In *Alert Termite,* no objections were filed and counsel for Alert Termite stated in its application that delay in receiving payment for its services and expenses would impose a significant financial burden on counsel.

suggests that substantial attorney's fees will be incurred each month by the Debtor. To the contrary, this case appears to be fairly straightforward by comparison to more complex ones under Chapter 11 having numerous creditors and a variety of complicated legal or factual issues to resolve.

As noted, *Knudsen* permits an employment arrangement which provides for interim compensation payments for attorneys before court approval. However, as the Court has already determined that the Debtor in this case fails to satisfy the *Knudsen* criteria, the Court is without authority to permit payment of monthly fees in the manner sought by the Application.

The Court finds persuasive the authority expressed in the several bankruptcy courts in Ohio which have considered *Knudsen* on facts almost identical with the present case. See, *In re Perrysburg Marketplace Co.*, 176 B.R. 797 (Bankr.N.D.Ohio 1994) (post-petition payments to counsel outside of § 331 should be made only in rare circumstances and debtor in possession failed to meet *Knudsen* criteria); *In re Genlime Group, L.P.*, 167 B.R. 453 (Bankr.N.D.Ohio 1994) (debtor failed to show rare circumstances); *In re Shelly's, Inc.*, 91 B.R. 803 (Bankr. S.D.Ohio 1988) (case was not unusually large where exceptionally large fees were expected and debtor did not show that law firm would endure undue hardship if required to comply with § 331).

If the Court did not limit the authorization of the payment procedure utilized by Chapter 11 debtors for their attorneys to the certain rare cases contemplated by *Knudsen,* the notice and hearing *prior* to allowance and disbursement requirement, as stated in Sections 330 and 331 of the Code. would be rendered virtually meaningless. *In re Dandy Lion Inns of Am.*, 120 B.R. 1015, 1018 (Bankr.D.Neb.1990).

Based on the foregoing, the Application, so far as it seeks monthly invoicing and payments for attorney's fees *prior* to Court allowance, is hereby DENIED.[9]

### D. *Hourly Compensation and Use of Pre–Petition Retainer.*

In the Objection to the Application, the Trustee contends that the Code does not authorize the Court to permit TS & H to be compensated on an hourly basis, while, at the same time, TS & H is allowed to hold on to a so-called "evergreen" retainer for payment upon counsel's final fee application. In this case, the retainer would consist of the $2,500 Debtor paid TS & H prior to filing its petition for Chapter 11 relief.

The Trustee argues for a restrictive interpretation of § 328(a) which allows employment of professionals "on any reasonable terms and conditions ..., *including* a retainer, on an hourly basis, *or* on a contingent fee basis" (emphasis added). In the Trustee's view, § 328(a) of the Bankruptcy Code only permits the Court to authorize one of the suggested forms of compensation for professionals. In the alternative, the Trustee argues that if, a court authorizes a pre-petition retainer, that professional must deduct its fees and expenses from the retainer through the life of the Chapter 11, but only after notice, hearing and court approval. The Trustee offers no support for his restrictive reading of § 328(a).

Section 102(3) of the Bankruptcy Code provides that the word "including" is not limiting and § 102(5) provides that the word "or" is not exclusive. The legislative history to § 102(5) indicates: "Paragraph (5) specifies that 'or' is not exclusive. Thus, if a party 'may do (a) or (b),' then the party may do either or *both.* The party is not limited to a mutually exclusive choice between the two

---

9. In another case predicated on the appropriate facts, this Court would find acceptable a compensation procedure whereby: At the end of every month, attorneys and other professionals could file and serve on interested parties applications for compensation pursuant to Bankruptcy Rule 2016. If no objection is filed within a reasonable time (e.g., 15 days), and if the court approves the application, the court may sign an order approving the request. If an objection is filed and a hearing is requested, the hearing may be set on an expedited basis. The facts presented in this case, however, simply do not place it among the "rare" category of cases where the only courts which have considered the issue would have allowed a transfer of estate funds to professionals before Court allowance.

alternatives." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 315 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6272 (emphasis added). As such, the Court finds that under § 328(a), compensation on one of the bases listed, or any combination of those bases is permissible so long as the terms and conditions are ultimately determined to be "reasonable".

■ The Trustee's objection to the so-called "evergreen" retainer sought under the Application is premature. At any time, during TS & H's employment as Debtor's counsel, any party in interest, including the Trustee, may raise an objection under 11 U.S.C. § 328(a) to the continued use of such a retainer by TS & H. An appropriate time to assert such an objection is during the application for interim compensation on the grounds that the terms of employment of debtor's counsel have proven to be improvident. *In re Benjamin's–Arnolds, Inc.,* 123 B.R. 839, 842 (Bankr.D.Minn.1990). (The court authorizes an "evergreen" retainer in a situation where professionals submit applications for interim compensation, and also permits parties in interest to file objections under 11 U.S.C. § 328(a) to continued retention of the retainer upon each application for interim compensation).

Accordingly, the Application is GRANTED with respect to the Debtor's pre-petition payment of a $2,500 retainer. Pursuant to this Order, TS & H is authorized to hold the $2,500 retainer in escrow towards payment against its final fee application, or until such time as this Court determines otherwise.

### E. *Priority Lien on Debtor's Real Property Ahead of Existing Lien Holders.*

■ Finally, the Application seeks an order from this Court permitting TS & H to obtain a first-priority lien on Debtor's real property to secure TS & H's fees up to the amount of $30,000. Such a lien is requested by Debtor under many of the same arguments already advanced for approval of the "flexible" fee arrangement proposed in the Application. Mr. Lerner claims once more that it is reasonable for the Court to make this provision pursuant to § 328(a), and that it is unlikely any lien holders will ever be adversely effected because of certain expec-

tations he has about the success of this Chapter 11 case.

Before a lien can be obtained under § 364(d), the debtor must show that it is unable to obtain credit elsewhere and that the existing lien holders of the property remain adequately protected. 11 U.S.C. § 364(d)(1)(A) and (B). The Debtor's Statement of Financial Affairs and Schedules filed June 3, 1996, and the appraisals attached to the Debtor's Reply reflect a value on the real estate of $197,000. The Schedules further reflect a first lien on the real estate in favor of Fifth Third Bank in the amount of $51,-049.36. Finally, the Schedules indicate that there are unliquidated and disputed federal tax liens and unliquidated and disputed State of Ohio tax and insurance liens secured by the real estate totaling $221,468.84. In its Reply to Fifth Third Bank, the Debtor argues that the bank will be adequately protected as the first lien holder.

However, at the hearing, Mr. Lerner conceded that the Debtor has no equity in the real estate in which TS & H desires to obtain a senior lien superior to that of Fifth Third Bank, the IRS and the Ohio tax and insurance authorities. Furthermore, Debtor offered no evidence demonstrating how the existing lien holders would be adequately protected if the relief requested was granted. The only information provided was that TS & H expects that the Debtor's accounts receivable, which are unencumbered by liens, will remain at sufficient levels to pay TS & H's fees and the Debtor's operating expenses. Mr. Lerner also expressed a strong belief that TS & H probably would not have to resort to the security interest in the real estate for payment of its fees.

Even assuming the Debtor could satisfy the essential requirement of § 364(d)(1)(A) by showing that it is "unable to obtain such credit otherwise," the Court finds, on this record, that the Debtor has failed to demonstrate that all of the lien holders having a security interest in the Debtor's real estate will be adequately protected if the Court grants TS & H a senior lien. What Debtor's argument boils down to is an attempt to subordinate the liens of Fifth Third Bank, the IRS and the Ohio tax and insurance authorities to the administration costs being incurred by this Chapter 11 debtor, as an

allowance for attorney's fees. Clearly, that argument runs counter to the statutory scheme established by Congress regarding the payment of administrative expenses, including those of professionals engaged by the estate.

Clear and specific provision has been made by Congress in § 503(b)(2) to pay debtor's counsel, as a cost of administration, for services rendered to a debtor in possession. *In re Kahler*, 84 B.R. 721, 724 (Bankr.D.Colo. 1988). None of the arguments advanced by Debtor in this case persuade this Court to depart from the carefully tailored compensation scheme set forth in §§ 327–331 of the Bankruptcy Code.[10] "An attorney who is authorized by the court to represent a debtor in a case under the Bankruptcy Code is not a creditor of the estate; such attorney's compensation is governed by the standards expressed in Code § 330(a)." *In re Roamer Linen Supply, Inc.*, 30 B.R. 932, 935 (Bankr. S.D.N.Y.1983) (refusing request for security interest under § 364(d) to secure payment of attorney's fees); *see also In re Darnell*, 834 F.2d 1263 (6th Cir.1987) (As a general rule, administrative claims are subordinate to claims that are secured by a perfected lien against the debtor's property.); *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir.1994) ("A debtor has the burden to establish that the holder of the lien to be subordinated has adequate protection.")

Accordingly, the Debtor's Application so far as it seeks a first-priority lien in Debtor's real estate in favor of TS & H is hereby DENIED.

IT IS SO ORDERED.

---

10. The Debtor cites several cases as authority for this Court to permit its counsel to obtain the priority lien requested. Each case, however, is distinguishable from the Debtor's case: *In re Artesian Industries, Inc.*, No. 92–62018 (Bankr. N.D.Ohio filed Nov. 3, 1992) (By *agreement* with secured creditor, trustee's counsel was permitted a carve out of $165,000 from secured creditor's cash collateral); *In re Integrated Bldg. Materials, Inc.*, No. 91–05500 (Bankr.S.D.Ohio filed Sept. 12, 1991) (The lien of debtor's counsel was not carved out from collateral of a secured party but was, rather, a super-priority administrative expense lien which this Court has already determined is not warranted in this case. In addition, the lien granted to counsel for the unsecured creditor's committee in that case was out of *unencumbered* assets of the debtor); *In re Phar-mor, Inc.*, No. 92–41599 (Bankr.N.D.Ohio filed Aug. 17, 1992) (It is unclear from the materials provided by the Debtor whether the court in *Phar-mor* authorized any lien carve out; but, in any event, since Phar-mor is a large case, it would not be analogous to the case *sub judice*).