In re PAN AMERICAN HOSPITAL
CORPORATION, Debtor.

In re PAN AMERICAN MEDICAL
CENTERS, INC., Debtor.

Nos. 04–11819–BKC–AJC,
04–11820–BKC–AJC.

United States Bankruptcy Court,
S.D. Florida.

July 29, 2004.

Robert P. Charbonneau, Kluger, Peretz, Kaplan & Berlin, Miami, FL, for Debtors.

Johanna Armengol, Office of the Assistant U.S. Trustee, Southern District of Florida, Miami, FL, U.S. Trustee.

### MEMORANDUM DECISION AND ORDER (1) SUSTAINING IN PART UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' COUNSEL'S RETAINER AND (2) MODIFYING ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PROFESSIONALS

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the Court on Tuesday, June 1, 2004 at 2:00 p.m. upon the First Interim Application For Allowance of Compensation and Reimbursement of Expenses to Debtors' Counsel ("First Interim Fee Application"). The Court allowed the Application, as reflected on the record, but retained jurisdiction to resolve the *ore tenus* objection of the United States Trustee ("UST") to the treatment of the Applicant's pre-petition retainer as an "evergreen retainer". The Court, taking judicial notice of the Court file, and the parties and the Court having agreed to decide the merits of the argument on the

basis of the submission of competing memoranda decisions, makes the following findings of fact and conclusions of law:

### FACTUAL AND PROCEDURAL BACKGROUND

1. On March 5, 2004, Pan American Hospital Corporation and Pan American Medical Centers, Inc. (together "the Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases are being jointly administered.

2. On March 8, 2004, as part of its first day motions, the Debtors filed their Application For Employment of Howard J. Berlin, Robert Paul Charbonneau and Kluger, Peretz, Kaplan & Berlin, P.L. As General Bankruptcy Counsel To The Debtors Pursuant to 11 U.S.C. § 327(a) ("Employment Application") (CP 3). (The aforementioned attorneys and their law firm will hereinafter collectively be referred to as "KPKB"). The Employment Application requested authority to "employ Berlin, Charbonneau and KPKB under a general retainer with compensation to be fixed by the Court," but it did not specifically indicate that KPKB would be treating the retainer it received from the Debtors as an "evergreen retainer".

3. Also as part of their first day motions, the Debtors filed their Motion For Entry of An Administrative Order Under U.S.C. § 105(A) and 331 Establishing Procedure For Monthly and Interim Compensation and Reimbursement of Expenses For Professionals ("Shortened Fee Application Motion") (CP 10). The Shortened Fee Application Motion requested authority for Debtors' professionals to file monthly fee applications with this Court. The Shortened Fee Application Motion did not disclose KPKB's intention to treat its retainer as an "evergreen retainer".

4. By Order dated March 9, 2004, this Court approved the Employment Application (CP 38).

5. By Order dated March 30, 2004, this Court granted, in part, the Shortened Fee Application Motion, and authorized Debtors' professionals to file fee applications every 60 days (CP 77).

6. KPKB filed its First Interim Fee Application on May 7, 2004 (CP 149), requesting fees in the amount of $146,412.50 and costs of $6,925.48. The First Interim Fee Application disclosed KPKB was holding a pre-petition retainer in the amount of $79,557.00, but there is no indication therein that KPKB intended to keep its retainer as an "evergreen retainer". There is also no indication in the belatedly-filed Rule 2016 Disclosure that KPKB intended to treat its retainer as an "evergreen retainer".

7. At the hearing on the First Interim Fee Application, KPKB disclosed to this Court that it was requesting its retainer be treated as an "evergreen retainer". The UST objected to such treatment.

8. This Court allowed the First Interim Fee Application, as reflected on the record, subject to the allowance of the proposed "evergreen retainer", and directed the parties to submit competing orders.

### ARGUMENT

The UST objects to KPKB's First Interim Fee Application to the extent KPKB seeks authority from this Court to hold its retainer "evergreen" until the end of the case. The UST objects to the "evergreen retainer" as being unnecessary to minimize KPKB's exposure to the risk of non-payment, especially because KPKB is already protected by the benefit of a shortened 60–day fee application period allowed by this Court, and the Debtors in their reorganization efforts need access to all the post

petition funds they can obtain. The UST also argues that the "evergreen retainer" proposal suggests that there is some basis for treating KPKB differently from other administrative creditors in these cases. Furthermore, the UST submits that it is not the practice in this district to award "evergreen retainers", and by so doing, the Court will open the flood gates to baseless requests for "evergreen retainers".

### JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 105, 28 U.S.C. § 1334, and 11 U.S.C. § 328. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### APPLICABLE LAW AND ANALYSIS

■ There are essentially two kinds of retainers: *classic* and *special* retainers. *In re Pannebaker Custom Cabinet Corp.*, 198 B.R. 453, 459 (Bankr.M.D.Pa.1996). A classic retainer is a payment to a lawyer irrespective of whether the lawyer provides the client any services. The California Supreme Court defined the "classic 'retainer fee' arrangement" in *Baranowski v. State Bar*, 24 Cal.3d 153, 164 n. 4, 593 P.2d 613, 618 n. 4, 154 Cal.Rptr. 752, 757 n. 4 (1979), as one in which "a sum of money [is] paid by a client to secure an attorney's availability over a given period of time," so that "the attorney is entitled to the money regardless of whether he actually performs any services for the client." Classic retainers have been explained both as payment "to bind the attorney from representing another" and simply as payment "for accepting the case." *Jacobs v. Holston*, 70 Ohio App.2d 55, 58, 434 N.E.2d 738, 741 (1980). An essential characteristic of the classic retainer is that it is entirely earned by the attorney upon payment, with the client retaining no interest in the funds." *In re McDonald Bros. Con-*struction, Inc., 114 B.R. 989 (Bankr. N.D.Ill.1990).

■ A *special* retainer can take one of three forms: (a) security retainer; (b) advance fee retainer or (c) evergreen retainer. Under a security retainer, the money given to the debtors' attorneys is not present payment for future services. Rather, the retainer remains the property of the debtor until the attorney "applies" it to charges for services actually rendered; any unearned funds are turned over by the attorneys.

■ The advance fee retainer is another type of special retainer that the debtor may negotiate with its attorney. Under this arrangement, the debtor pays, in advance, for some or all of the services that the attorney is expected to perform on the debtor's behalf. "This type of retainer differs from the security retainer in that ownership of the retainer is intended to pass to the attorney at the time of payment, in exchange for the commitment to provide the legal services." *McDonald* at 1000.

■ The evergreen retainer is yet another type of special retainer. The evergreen retainer agreement contemplates that the retainer shall remain intact and that the debtor's professionals' interim compensation shall be paid from the debtor's operating capital. Accordingly, professionals holding evergreen retainers do not look to this sum until such time as a final fee application is presented and approved by the court. *In re Benjamin's–Arnolds, Inc.*, 123 B.R. 839, 842 (Bankr. D.Minn.1990); *In re W & W Protection Agency, Inc.*, 200 B.R. 615 (Bankr. S.D.Ohio 1996); *In re Insilco Technologies, Inc., et al.*, 291 B.R. 628 (D.Del.2003).

■ The allowance of an evergreen retainer in a Chapter 11 case is an issue of first impression for this Court. The

Court's analysis of the applicable Code provisions and consideration of the case law on this issue leads this Court to conclude that evergreen retainers are permissible in Chapter 11 cases. Notwithstanding, the Court believes the UST's objections are well-taken. Thus, the Court will allow the retention by KPKB of the retainer as evergreen, but it will modify its previous order on interim compensation to address the concerns of the UST and remedy any risk of harm that may result from the retention of an evergreen retainer.

 Professional retention and compensation under the Bankruptcy Code is governed by §§ 327, 328, 329, 330, 331 and FRBP. 2016 and 2017. Section 11 U.S.C. § 328 applies to all professionals and provides, in pertinent part:

> ... with the court's approval, [the Debtor] may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on *any reasonable terms and conditions* of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

Section 11 U.S.C. § 329 provides that:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the *reasonable* value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive....[Emphasis added.]

Based upon the foregoing statutory language, the bankruptcy court measures the terms of professional engagements by debtors using a standard of "reasonableness." However, the definition of *reasonableness* is fluid and the Court is given discretion in determining what services and charges are reasonable. As the Third Circuit noted:

> ... the court's further inquiry about what is "reasonable" must be tailored to Bankruptcy Code requirements, including the particular circumstances of a chapter 11 proceeding, the court's supervisory role and the interests of the various constituents. Factors to be considered, include, but are not necessarily limited to (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; (3) whether the retention, as proposed, is in the best interests of the estate; (4) whether there is creditor opposition to the retention and retainer provisions; and (5) whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of

"risk minimization," especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out. This list is not intended to be exhaustive, nor will every factor necessarily be of equal weight, depending upon the circumstances. Moreover, even if the terms of an engagement are approved, § 328 provides that the court retains discretion to modify the retention "if such terms and conditions prove to have been improvident." . . . .

In the instant case, the Debtors argue that the evergreen retainer is reasonable. The UST disagrees. The UST concedes that evergreen retainers are permitted in bankruptcy cases to minimize a professional's exposure to the risk of non-payment, but argues that there are other risk-minimizing devices already in place in this case and the additional protection of an evergreen retainer is unnecessary and unreasonable.

The seminal case for the genesis of risk minimizing devices to protect Chapter 11 professionals from the risk of non-payment is *In re Knudsen Corporation,* 84 B.R. 668 (9th Cir. BAP 1988). In what was characterized as a large case, the court approved a monthly fee application procedure similar to the "evergreen retainer" or the "security retainer" permitting periodic replenishment of the professionals' retainers. The stated purpose of approving use of the procedure was to address:

> ". . . the problem, arising especially in large cases, that when counsel must wait an extended period for repayment, counsel is essentially compelled to finance the reorganization. This result is improper and may discourage qualified practitioners from participating in bankruptcy cases." *Id.* at 672.

The *Knudsen* court acknowledged that it could implement this type of fee payment procedure specifically because the case was a "controlled liquidation for the benefit of a secured creditor . . . [who] ha[d] been providing funding to the Debtors to pay administrative obligations and other expenses" and the secured creditor had agreed to payment of the compensation in question out of assets subject to its security agreement." *Knudsen* at 673.

In addition, the *Knudsen* court held that it would authorize such procedure only in rare cases satisfying four conditions: (a) an unusually large case that has an exceptional amount of fees accrue each month; (b) waiting an extended period for payment would place an undue hardship on counsel; (c) the professional is capable of disgorging fees if necessary; and (d) the fee retainer procedure itself is subject to prior notice and hearing before any payment is made. *Id.* at 672–673.

In this case, the UST argues that the Debtors are working towards a successful reorganization, and unlike a liquidation, the Debtors have control over post-petition revenues. *See In re Fitzsimmons Trucking, Inc.,* 124 B.R. 556, 558 (Bankr.D.Minn. 1991). Furthermore, in the instant case, there is no secured creditor stepping forward and funding the Debtors' administrative expenses. The UST also suggests that, although this case may be a high profile case in Miami–Dade County, it cannot be categorized as an "unusually large" case.

In *Knudsen,* the monthly fees were in excess of $250,000 per month. In the present case, KPKB's fees from March 5, 2004 through April 30, 2004 were approximately $146,412. While the Court recognizes that the size of this case differs from the *Knudsen* case, the fees incurred and to be incurred are substantial and the necessity for risk-minimizing devices still exists. The Court does not expect, nor does it believe Congress expected Debtors' coun-

sel to fund the necessary legal fees incurred during the pendency of a Chapter 11 case; hence the allowance in the Bankruptcy Code for the 120–day interim fee period.

In cases where the 120–day period may not be sufficient to protect a debtor's counsel from the risk of non-payment, the Court will shorten the 120–day period, as it has done in this case. The Court approved a shortened 60–day fee application period for all professionals in this case, including KPKB. The 120–day period prescribed by the Code was shortened precisely so that KPKB and the other professionals would not be under "undue hardship" in having to wait for payment of their fees.

■ By requesting an additional risk-minimizing device, KPKB is essentially asserting the 60–day period for interim fee applications is not sufficient to protect against the risk of non-payment. The Court disagrees; the shortening of time for the filing of fee applications is sufficient to adequately minimize KPKB's risk of non-payment in this case. The Court is not persuaded that KPKB has proven it is necessary to implement multiple procedures to protect it from the risk of non-payment of its fees.

In *Benjamin's–Arnolds,* the court approved a request for an evergreen retainer, finding that the initial prospects for a swift reorganization are favorable. 123 B.R. 839, 841 (Bankr.Minn.1990). However, the court imposed a condition that the affected firm(s) would not be permitted to bring fee applications greater than every 120 days as per 11 U.S.C. § 331. The *Benjamin's–Arnolds* court appeared to find only one risk-minimizing device was necessary and reasonable under facts of the case. The court further provided for review of the continuing carryover of the retainers at each fee application. *Id.* at 842.

In *In re W & W Protection Agency, Inc.,* 200 B.R. 615 (Bankr.S.D.Ohio 1996), counsel sought a "security arrangement" for the payment of compensation. The arrangement would grant counsel a lien of up to $30,000 that would prime existing liens and have Section 503(b) and 507(a) priority. Counsel also requested expedited fee hearings and sought evergreen status for a $2,500 retainer. *Id.* at 621–622. The court rejected outright the proposed "security arrangement", stating: "Judicial approbation...would lend credence to sensationalistic accusations that Chapter 11 is nothing more than a 'feast for lawyers.'" *Id.* at 619.

The court approved the evergreen retainer, but in so doing, applied the conditions imposed in *Benjamin's–Arnolds,* that the matter could be reviewed in subsequent fee applications. The Court also disapproved a request in the case for expedited fee hearings. The court found it sufficient to approve one risk-minimizing device, the evergreen retainer, but not more. Thus, the court did not approve the shortened fee application period or the "security arrangement" described. So too, the undersigned believes that it is sufficient to protect KPKB by approving one risk-minimizing device, but it is unnecessary and unreasonable under the facts of this case to approve any more such devices.

While the Court does not look to counsel to absorb all the risk, it will also not expect the Debtors to do so either. There are many players in this Chapter 11 case and the risks attendant to success should be shared among them. It is the creditors, represented by the UST, who must pay for the Debtors' decision to provide multiple risk-minimizing devices to entice counsel, as such a decision obviously leaves less

operating capital for the Debtors' reorganization. The Court does not believe the creditors should bear all the costs, particularly in light of the fact there are questions regarding notice.[1]

Accordingly, the Court will permit the retainer of KPKB to be held as an "evergreen retainer" but the Court will modify its prior order shortening the time for interim fee requests so that KPKB will be allowed to seek interim fees not greater than every 120 days as per 11 U.S.C. § 331. It is

**ORDERED AND ADJUDGED** that the UST's objections to the First Interim Fee Application of KPKB are SUSTAINED, in part, and OVERRULED, in part, as follows:

1. KPKB's request to treat its pre-petition retainer as an "evergreen retainer" is GRANTED and KPKB may hold the retainer it received from the Debtors evergreen, until the final fee application is filed, subject to paragraph 3 herein.

2. The Court's prior order granting a shortened period within which to file fee applications (CP 77) is AMENDED AND MODIFIED to exclude KPKB as a party afforded such relief. KPKB may not seek reimbursement of attorneys fees and costs every 60 days, but may do so no less than every 120 days from the order of relief.

3. This order shall be served on all creditors and interested parties in this case; and, in conjunction with the hearing on all KPKB's fee applications for interim compensation, any party in interest, including the UST, may object under 11 U.S.C. § 328(a) to the continued holding of said retainer on the ground that such terms of employment have proven to be improvident.

---

1. KPKB's first disclosure of its intent to treat the retainer as an evergreen retainer is found in the First Interim Fee Application. Other courts have acknowledged the necessity for proper disclosure of an evergreen retainer, and require that the evergreen retainer provision in a proposed engagement be "highlighted and summarized in the application; moreover, a copy of the engagement agreement should be attached as an exhibit to the application containing language which makes it clear that the applicant intends to hold such retainer until the end of the case ...." *In re Insilco Technologies, Inc.,* 291 B.R. 628, 636 (Bankr.D.Del.2003). That was not done in this case.