**In re JEFFERSON BUSINESS CENTER ASSOCIATES, a Colorado general partnership, ein 84-0990332, Debtor.**

**Bankruptcy No. 91-18773-SBB.**

United States Bankruptcy Court, D. Colorado.

Jan. 30, 1992.

Jeffrey A. Weinman, William A. Richey, Denver, Colo., for debtor.

Steven E. Abelman, Denver, Colo., for affiliated National Bank–University Hills.

Leo M. Weiss, Denver, Colo., for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court on the Debtor's Motion to Pay Post Petition Retainer and to Allow Debtor's Counsel to Draw Against Retainer on Monthly Basis filed October 18, 1991, and Objections thereto filed by Affiliated National Bank—University Hills, formerly known as First Colorado Bank & Trust, N.A., and the United States Trustee. The Court held a hearing on this matter January 8, 1992. The Court, having reviewed the file and the objections in this matter, having heard the statements and arguments of counsel, and being fully advised in the premises, issues this Memorandum Opinion and Order.

The two issues before the Court are:

(1) Whether a Chapter 11 debtor-in-possession may pay its attorney a post-petition retainer for post-petition legal services and, if yes,

(2) Whether this creditor may prevent the Debtor from payment of a post-petition retainer because (a) the creditor properly perfected its secured interest in the Debtor's rental income by appointment of a pre-petition State Court Receiver, and (b) the creditor does not consent to Debtor's use of the rents as cash collateral.

The Court concludes as follows:

(1) A debtor-in-possession may make a post-petition retainer payment to its counsel for post-petition services; the Code does not prohibit such conduct.

(2) This Debtor is prevented from making a post-petition retainer payment to its counsel because,

(a) the objecting creditor's secured interest in rents of the Debtor was properly perfected, pre-petition, by the appointment of a State Court Receiver, and

(b) the rents, as proceeds, constitute cash collateral and the creditor does not consent to use of the cash collateral to pay the retainer.

Integral to this decision is a determination that when a secured creditor has a state court receiver appointed, pre-petition, then the creditor need not file a post-petition Section 546(b) notice to perfect its secured interest in debtor's rental income.

## FINDINGS OF FACT

1. This case was commenced by the filing of a Voluntary Petition under Chapter 11 of the Bankruptcy Code on June 28, 1991.

2. The Debtor-in-Possession, Jefferson Business Center Associates ("Debtor"), sought authority from this Court to employ the law firm of Silver, Robinson and Barrick to represent Debtor as its bankruptcy counsel.

3. Silver, Robinson and Barrick was granted authority to represent the Debtor with respect to this bankruptcy case. Silver, Robinson and Barrick, P.C. ceased operations on July 31, 1991 at which time the law firm of Jeffrey A. Weinman, P.C. was appointed as counsel for Debtor.

4. Affiliated National Bank—University Hills, formerly known as First Colorado Bank and Trust, N.A. (the "Bank" or "Creditor"), is the principal secured Creditor of the Debtor.[1] The Bank is secured by an interest in the Debtor's Real Property

---

1. On or about August 21, 1984, the Debtor delivered to the Bank a promissory note in the principal amount of $1,100,000.00 (the "Note"). The Note was extended on several occasions to and including December 15, 1992. As of March 27, 1991, Debtor was indebted to the Bank in the principal amount of $971,391.07, together with accrued interest of $5,511.67. The Debtor concurrently delivered to the Bank a Deed of Trust and Security Agreement (the "Deed of Trust"),

conveying to the Public Trustee of Jefferson County, Colorado for the benefit of the Bank certain real and personal property described in the Deed of Trust, located at 1310 Wadsworth Boulevard, Lakewood, Colorado 80215 (the "Real Property"). The Debtor also delivered to the Bank an Assignment of Rents. The Assignment of Rents granted to the Bank a security interest in the rents generated from the Real Property.

as evidenced by a Deed of Trust on the Real Property. Additional security for the Bank includes an Assignment of the Debtor's rents generated from the Real Property.

5. Prior to the filing of the Debtor's bankruptcy Petition, the Bank commenced a foreclosure proceeding on the Real Property and sought the appointment of a State Court Receiver to take control of the Real Property. A State Court Receiver was appointed.

6. Subsequently, after the filing of the bankruptcy Petition, the State Court Receiver relinquished control of the Debtor's property as required by the provisions of 11 U.S.C. § 543.

7. Subsequent to the Debtor filing its bankruptcy Petition, the Bank has *not* filed a notice pursuant to 11 U.S.C. § 546(b).

8. A review of the Debtor's monthly financial reports filed with the U.S. Trustee's Office and the Debtor's proposed Amended Disclosure Statement reveals that, save for some extraordinary expenses incurred by the Debtor and, in particular, expenses relating to tenant finish and payment of Receiver's fees, the Debtor's business, since the filing of its bankruptcy Petition, has had a positive cash flow.

9. The Debtor filed a request with this Court to pay a post-petition retainer of $5,000.00 to its current bankruptcy counsel, Jeffrey A. Weinman, P.C. and to allow Jeffrey A. Weinman, P.C. to draw against the retainer on a monthly basis in an amount equal to 75% of the fees and expenses incurred in the representation of the Debtor for each such month.

10. The U.S. Trustee filed an Objection. He asserts that the Bankruptcy Code contains no authority for the payment of post-petition retainers and, in the alternative, payment of a post-petition retainer is not warranted in this case.

11. The Bank objects to Debtor's use of its revenues to pay the retainer; virtually all of Debtor's revenues are rents. The Bank argues that all Debtor's rents are subject to the Bank's pre-petition, properly perfected lien rights and constitute cash collateral. The Bank does not consent to use of its cash collateral. The Bank did not file a post-petition notice to perfect its interest in rents, pursuant to 11 U.S.C. § 546(b). Instead, the Creditor relies exclusively on the pre-petition appointment of the Receiver to effectuate perfection of its secured claim and its rights to resist Debtor's effort to use cash collateral.

## CONCLUSIONS OF LAW

### I. *Payment of Post–Petition Retainer.*

■ The payment of a post-petition retainer, while generally not looked upon with favor by bankruptcy courts, is not prohibited by the Bankruptcy Code. The Bankruptcy Code does not dictate a strict and rigid framework for professionals' compensation:

**§ 328. Limitation on compensation of professional persons.**

(a) The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis....

11 U.S.C. § 328(a).

Rather, the provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical. 11 U.S.C. §§ 327–331 and 503(b)(2).[2]

■ A determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Court. Such a determination must be made on a case-by-case basis. In that process, "[t]he burden to establish that proposed terms and conditions of professional employment proposed in a bankruptcy case are reasonable is on the moving party." *In*

---

2. "Clear and specific provision is made in 11 U.S.C. § 503(b)(2) to pay debtor's counsel, as a cost of administration, for services rendered to a debtor post-petition. It is tailored to allow payment to debtor's counsel, but only within the scheme and safeguards embodied in Sections 327 through 331 of the Code." *In re Kahler*, 84 B.R. 721, 724 (Bankr.D.Colo.1988).

*re NBI, Inc.,* 129 B.R. 212, 219 (Bankr. D.Colo.1991).

 In determining whether a post-petition retainer in Chapter 11 is justified, the Court must consider several recognized factors,[3] plus special factors which include, but are not necessarily limited to: (1) the retainer's economic impact on the debtor's ongoing business operation; (2) the retainer's economic impact on the ability of the debtor to reorganize; (3) the amount and reasonableness of the retainer; (4) the reputation of debtor's counsel; and (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should this Court determine that the fees paid to counsel are not justified. Further, the Court should also take into account, particularly under the circumstances of the case before it, the fact that the Debtor's current bankruptcy counsel is substitute counsel for the Debtor and has recently established a new law practice. Coupled with these considerations in weighing the propriety of a post-petition retainer is this Court's belief that competent counsel is imperative for a debtor to successfully attempt reorganization in Chapter 11.

 While it is often the case that post-petition retainers and the ability to draw against such retainers are granted in large bankruptcy cases, and usually to large law firms, this Court sees no reason to treat smaller law firms any differently where the facts and circumstances of the case warrant the payment of a post-petition retainer. A smaller law firm can and often does face the same, or perhaps greater, burdens, costs, inconvenience, and financial strain, as does a larger firm if it is unable to receive a retainer. A small firm should not be treated any differently, as long as it meets all of the criteria referenced above.

In this case the criteria are satisfied: (1) the Debtor's business, since it has been in Chapter 11, has had a positive cash flow save for some extraordinary expenses in the nature of capital improvements; (2) the amount of the proposed retainer is modest; (3) the economic impact of the retainer on the Debtor's operations and ability to reorganize appears slight; (4) the Debtor needs able counsel to represent it in this bankruptcy case; (5) the reputation and skill level of Debtor's counsel is good; and (6) the ability of the Court to successfully order Debtor's counsel to disgorge fees paid is strong, should it become necessary to do so. The Court finds that good cause exists for the granting of the Debtor's request to pay a post-petition retainer to its bankruptcy counsel. The Court also would authorize the Debtor's bankruptcy counsel to draw against the retainer on a monthly basis.

II. *Payment of Post–Petition Retainer is Precluded in this Case as Unauthorized Use of Cash Collateral.*

 In addition to approving the concept that a debtor can pay its bankruptcy counsel a post-petition retainer, the Court must determine whether this Debtor may pay such a retainer from the proceeds it holds generated from its ongoing rental income.

The Bank has objected to the Debtor's request to pay the post-petition retainer from Debtor's rental income asserting that: (1) the Bank has a perfected security interest in the Debtor's rents as a direct result of the pre-petition appointment of a State Court Receiver, in accordance with state law, and (2) those rents constitute cash collateral and the Debtor, thus, cannot use them to pay the retainer unless the Bank consents to allowing Debtor to do so or the Court orders otherwise. 11 U.S.C. § 363(a) and (c)(2). The Bank bases its position on *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Bankr.D.Colo.1986).

---

**3.** "[A] fee retainer procedure ... may be authorized [where]: 1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month; 2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel; 3. The court is satisfied that counsel can respond to any reassessment in one or more of the ways listed above; and 4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder." *In re Knudsen Corp.,* 84 B.R. 668, 672–673 (9th Cir.BAP 1988). *See also, In re Frontier Airlines, Inc.,* 74 B.R. 973 (Bankr.D.Colo.1987); *In re Kaiser Steel Corp.,* 74 B.R. 885 (Bankr.D.Colo. 1987).

■ The Debtor asserts that the Bank's failure to file a post-petition notice pursuant to 11 U.S.C. § 546(b) renders the interest of the Bank unperfected with regard to the rents generated from the Debtor's Real Property. Therefore, the Debtor maintains that the rents do not constitute the Bank's cash collateral and the Debtor may use the rents without the Bank's consent. Interestingly the Debtor bases its position on *Morning Star, supra,* as well. Debtor maintains that *Morning Star* stands for the proposition that a Section 546(b) notice is absolutely necessary to perfect a creditor's interest in post-petition rents generated from a Chapter 11 debtor's real property and that this Creditor did not satisfy that mandate.

■ It is clear that without perfection of the Bank's lien in the Debtor's rents and profits, the lien remains inchoate and the rents and profits do not become cash collateral under 11 U.S.C. § 363. *In re Colter, Inc.,* 46 B.R. 510, 512 (Bankr.D.Colo.1984), *aff'd Consolidated Capital Income Trust v. Colter, Inc.,* 47 B.R. 1008 (D.Colo.1985). Further, it is clear that under Colorado law, a secured lender must take affirmative steps to perfect its inchoate lien in rents and profits and thus secure a right to take such rents and profits once the debtor has defaulted under the terms of its promissory note with such creditor. *In re Morning Star Ranch Resorts, supra* at 821 (and cases cited therein). Such affirmative steps include taking possession of the property, causing rents to be sequestered or seeking the appointment of a receiver. *Consolidated Capital Income Trust v. Colter, Inc., supra* at 1010.

■ The plain language of Section 546(b) reveals that it is a *post-petition* means for perfecting a security interest in property where such creditor's interest was not perfected pre-petition. As alluded to in Section 546(b), the generally applicable law in Colorado provides for pre-petition perfection by the assignee of an interest in rents upon the assignee's request for and the resulting appointment of a receiver. A mortgagee or assignee of rents who has been granted the right to collect rents upon default acquires no claim to rents until the mortgagee or assignee has taken certain affirmative steps to perfect his lien, such as taking physical possession of the rented premises or requesting the appointment of a receiver. *Fisher v. Norman Apartments, Inc.,* 101 Colo. 173, 181–182, 72 P.2d 1092, 1096 (1937). Here, a receiver was not only requested by the Bank, but was appointed, pre-petition, on March 28, 1991. As a result, the Bank's security interest in the rents generated by the Real Property was perfected several months prior to the June 28, 1991 Petition filing date.

Perhaps the leading case on this issue in this District is *Consolidated Capital Income Trust v. Colter, Inc., supra,* wherein the bankruptcy court had previously held that post-petition rents constituted the cash collateral of a creditor with an assignment of rents. The debtors appealed the decision of the bankruptcy court, contending that the rents were not cash collateral and that they had the right to the unfettered use of the rents during the pendency of the bankruptcy case. In *Consolidated Capital Income Trust v. Colter, Inc.,* Judge Matsch upheld the bankruptcy court:

> The Colorado Supreme Court has held that: 'Under our statute, and the general law as announced both prior, and subsequent, to the enactment of the statute, the mortgagee, even though rents are pledged as security, until he takes some effectual step to subject them to the payment of his debt, has but an inchoate or passive lien on such rentals.' *Megginson v. Hall,* 111 Colo. 104, 137 P.2d 411, 413 (1943). A mortgagee has a right to rents only under certain definite circumstances.... After the appointment of a receiver, a mortgagee with an assignment of rents in the deed of trust will have a claim superior to and effective against any interest of a lien creditor of the mortgagor in rents produced by the property.
>
> *Consolidated Capital Income Trust v. Colter, Inc., supra* at 1010–1011.

Judge Matsch held that in Colorado an assignee of rents who has been granted the right to collect rents upon default acquired

682

no claim to rents until the assignee has taken affirmative steps to perfect his lien, such as by requesting the appointment of a receiver. Section 546(b) provides a creditor with a post-petition mechanism for perfecting a security interest in rents where, unlike here, the creditor has not done so pre-petition.

In this Court's opinion, Debtor misconstrues *Morning Star,* when Debtor interprets it as holding, without qualification, that a Section 546(b) notice is necessary, at all times and under all circumstances, to perfect a creditor's secured claim in rents in a Chapter 11 case.[4] This Court believes that a Section 546(b) notice need not be filed with the bankruptcy court, at all times and under all circumstances. This is particularly true in a situation, as here, where the Creditor properly and timely perfected its lien on rents, in strict accordance with state law, by the appointment of a pre-petition Receiver.[5]

In addition, once the Bank's security interest in rents was perfected, it could not be unperfected, by operation of law, or extinguished, by the filing of the bankruptcy Petition.[6] Since the Bank had a perfected security interest in the rents pre-petition, such security interest continues in rents generated post-petition.

Based on the foregoing, it is apparent that the rents generated by the Real Prop-erty are subject to the perfected security interest of the objecting Creditor, the Bank, and they thus constitute cash collateral of the Bank pursuant to 11 U.S.C. § 363(a) and (c). Accordingly, it is

ORDERED that the Debtor's Motion to Pay Post–Petition Retainer and to Allow Debtor's Counsel to Draw Against Retainer on Monthly Basis is DENIED. The Debtor may not use any rents generated from the Real Property to pay attorneys' fees or for any purpose other than to preserve and maintain the collateral, consistent with *Morning Star, supra,* absent the consent of the Bank or an order from this Court.

---

**4.** The focus of *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Bankr.D.Colo.1986) was, essentially, on the nature and extent of the rights of a Chapter 11 debtor to continue business and expend rental income for necessary operations and maintenance of the debtor's rental property in the face of a Section 546(b) notice. It was not on the correct legal procedures to effectuate lien perfection which impact those rights of the debtor.

**5.** *Morning Star* alludes to the propriety and effect of pre-petition lien perfection in rents under state law:

In Colorado, a mortgagee or assignee of rents who has been granted the right to collect rents and profits upon default in a security instrument has only an inchoate lien. It is only upon taking affirmative steps to perfect that lien that one secures a right to rents and profits. The perfection of the lien then dates from when the action is begun. [Citations omitted.] Such affirmative steps include taking possession of the property, causing rents to be sequestered, or seeking appointment of a receiver pursuant to C.R.S. §§ 38–39–112, 38–39–113 (1982). [Citations omitted.]
*Morning Star Ranch Resorts, supra* at 821.

**6.** Section 552(b) of the Bankruptcy Code provides as follows:

Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, **rents,** or profits of such property, **then such security interest extends to such** proceeds, product, offspring, **rents,** or profits **acquired by the estate after the commencement of the case** to the extent provided by such security agreement and by applicable nonbankruptcy law....
11 U.S.C. § 552(b) (emphasis added).