In re PRINTCRAFTERS, INC., a Colorado corporation, d/b/a Phoenix Press, Inc.; d/b/a Color Tek Printing, Inc., a/k/a Media Communications Group, Inc., aka Renaissance Publishing Incorporated; d/b/a Strategic Mail, Inc., EIN 84–0924529 Debtor.

Bankruptcy No. 96–12068 MSK.

United States Bankruptcy Court, D. Colorado.

May 5, 1997.

---

---

**CORRECTED \* ORDER ON APPLICA-
TION FOR ALLOWANCE OF AD-
MINISTRATIVE EXPENSES OF
WEINMAN, COHEN & NEIBRUGGE,
P.C.**

MARCIA S. KRIEGER, Bankruptcy Judge.

THIS MATTER comes before the Court on the Application for Allowance of Administrative Expenses of Weinman, Cohen & Nei-

\* Stylistic and non-substantive corrections only.

brugge, P.C. (Application). The Application requests allowance of fees and expenses incurred in the representation of Debtor prior to the conversion of the case from Chapter 11 to Chapter 7. Notice of the Application was given in accordance with Fed.R.Bankr.P. 2002. M. Stephen Peters, the Chapter 7 Trustee (Trustee) filed a timely limited objection. The Trustee did not object to the allowance of the fees or expenses as requested but objected to Weinman, Cohen & Neibrugge, P.C.'s (WC & N) consumption of a prepetition retainer in partial satisfaction of its Chapter 11 administrative claim. A hearing was held at which the time the Court found that the requested fees and expenses were reasonable and allowable as an administrative claim under 11 U.S.C. § 503(b). The Court reserved final ruling on the Application until the parties briefed the issue of whether the retainer held by WC & N could be applied against its claim.

Having considered the undisputed facts and arguments of the parties, the Court finds and concludes as follows:

## I. JURISDICTION

This Court has jurisdiction in this contested matter pursuant to 28 U.S.C. § 1334. This is a core matter. 28 U.S.C. § 157(b)(2)(A) and (B).

## II. FACTUAL BACKGROUND

This case was filed by voluntary petition under Chapter 11 on February 29, 1996. Shortly thereafter the Debtor sought to retain WC & N as its bankruptcy counsel (retention application). The retention application recited that WC & N was disinterested, that the Debtor had paid WC & N a prepetition retainer of $25,000.00 (a portion of which had been expended on prepetition services and filing fees) and that the remaining portion of the retainer was held by WC & N in an interest bearing trust account. The affidavit of Jeffrey A. Weinman on behalf of WC & N was attached, but neither the appli-

cation nor the affidavit described terms of any attorney retention agreement.

The Debtor gave notice of the retention application and $25,000.00 prepetition retainer to all creditors pursuant to L.B.R. 202. No objections were filed.

On April 2, 1996, the Court entered an Order authorizing the Debtor to employ WC & N and Jeffrey A. Weinman as counsel. With regard to the retainer, the Order provided:

> The retainer is approved. Pending entry of an Order by the Court authorizing payment of fees and expenses, counsel shall hold all funds held on the date of the filing of the petition or received thereafter, in an interest bearing trust account and not draw against same.

On June 18, 1996, the case was converted to Chapter 7 and the Trustee appointed. The Application now before the Court recites that $6,583.48 of the original $25,000.00 retainer was applied prepetition to attorney fees and expenses, and that $18,416.52 remains in WC & N's trust account (retained funds). No copy of an attorney retention agreement has been presented to the Court.

### III.  ISSUE

WC & N and the Trustee agree that the retained funds are property of the bankruptcy estate. WC & N argues that it holds a prepetition security interest in such funds to the extent of its allowed fees and expenses. Since the Court has determined that WC & N's fees and expenses are reasonable. WC & N argues it should be entitled to draw against the retained funds. According to WC & N, to restrict it from applying the retained funds would defeat the purpose of having a retainer and chill future representation of Chapter 11 debtors by able and competent counsel who would then be subjected to the risk of nonpayment if a case were converted to Chapter 7.

The Trustee argues that because 11 U.S.C. § 726(b) subordinates Chapter 11 adminis-

trative expenses to Chapter 7 administrative expenses, payment to WC & N from the retained funds cannot be made until the estate is sufficiently administered to assure the administrative expense claims of both the Chapter 7 and Chapter 11 phases of the case will be paid in full. If there are insufficient assets to pay all administrative claims, the Trustee contends that WC & N's prepetition security interest would be avoidable.

The issue presented is: After conversion of a case from Chapter 11 to Chapter 7, may Debtor's counsel satisfy an allowed Chapter 11 administrative expense claim from a prepetition retainer?

### IV.  ANALYSIS

#### A.  Section 726(b).

■ Conversion of a Chapter 11 case to Chapter 7 changes the priorities for payment of creditors holding administrative expense claims allowed under § 503(b). Section 726(b) of the Bankruptcy Code provides that administrative expense claims incurred prior to the conversion are subordinate to those incurred during the administration of the case under Chapter 7:

> (b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4).(5), (6), (7) or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that **in a case that has been converted to this chapter under section 1009[sic], 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion** and over any expenses of a custodian superseded under section 543 of this title.  (Emphasis added.)

After conversion, Chapter 11 administrative claims are subordinated to subsequent Chap-

ter 7 administrative claims in order to assure sufficient funds for the liquidation and so-called "burial expenses" incurred in the Chapter 7 phase of the case. *In re Kaleidoscope of High Point, Inc.*, 56 B.R. 562, 565 (Bankr.M.D.N.C.1986); *In re IML Freight, Inc.*, 52 B.R. 124, 134 (Bankr.D.Utah 1985); *In re Codesco, Inc.*, 18 B.R. 225, 227 (Bankr. S.D.N.Y.1982); *In re Price Chopper Supermarkets, Inc.*, 19 B.R. 462, 468 (Bankr. S.D.Cal.1982).

The super-priority status for the so-called "burial expenses" after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases. This purpose would be negated if liquidating administrative expenses of an aborted Chapter 11 case could also qualify for super-priority status in a converted Chapter 7 case. *Codesco* at 227.

■ One effect of the subordination of Chapter 11 administrative expense claims is the ability of a Chapter 7 trustee to require disgorgement of interim payments made during the Chapter 11 phase of the case to the extent that there are insufficient assets to pay all Chapter 7 administrative expenses. *See United States Trustee v. Johnston*, 189 B.R. 676, 677 (N.D.Miss.1995) (attorney ordered to disgorge a portion of interim fee award sufficient to carry out the provisions of § 726(b)); *Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Electric Supply, Corp.)*, 185 B.R. 505 (Bankr. E.D.Va.1995) (attorneys and accountants required to disgorge compensation paid by Chapter 7 trustee when insufficient funds remained in estate to pay both Chapter 7 and Chapter 11 administrative expenses as required by § 726(b)); *In re Lochmiller Industries, Inc.*, 178 B.R. 241, 251 (Bankr.S.D.Cal. 1995) (Chapter 11 professionals required to disgorge amounts paid to them as Chapter 11 administrative claim in order to provide funds sufficient to pay Chapter 7 administrative claims); *Guinee v. Toombs (In re Kearing)*, 170 B.R. 1, 7–8 (Bankr.D.C.1994) (interim compensation paid to debtors' attorney subject to disgorgement for payment of Chapter 7 administrative expense claims under § 726(b)). The risk of disgorgement is shared by all professionals serving a Chapter 11 debtor-in-possession.

■ The language of § 726(b) is plain and unambiguous. In the absence of a clearly expressed legislative intent to the contrary or a result which is absurdly inconsistent with the remainder of the Code, the language must be deemed conclusive. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Hubbard v. United States*, 514 U.S. 695, 701–704, 115 S.Ct. 1754, 1758–59, 131 L.Ed.2d 779 (1995); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (Souter, J., dissenting), *reh'g denied*, 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994). Bankruptcy courts are not free to rearrange Congress' priorities for the treatment of creditors based on equitable grounds, except by application of § 510 to the claim of a particular creditor. *United States v. Noland*, —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

■ Because the retained funds are admittedly property of the estate, they must be administered as such. The funds may not be used to pay claims in deviation of priorities set out in § 726(b). To except the retained funds from general administration, WC & N must establish an interest in or a lien against the funds which is senior to the estate's interest. However, the relative interests of the estate and WC & N may become moot if there are sufficient assets to pay all Chapter 7 and other Chapter 11 administrative expenses. Thus, the Trustee is correct. Absent a determination that WC & N has a lien upon or interest in the retained funds senior to the interest of the estate, WC & N may not draw against the funds until the Chapter 7 administration is sufficiently complete to determine that all administrative claims incurred in both the Chapter 11 and Chapter 7 phases of the case are payable in full.

**B. Does WC & N have an interest senior to that of the Trustee in the retained funds?**

The crux of this controversy is not the application of § 726(b), but instead the deter-

mination of WC & N's interest in the retained funds. The retained funds are the remnants of a prepetition retainer in which WC & N argues it has a prepetition security interest. The Trustee argues that WC & N's security interest is avoidable. The Court disagrees with both parties.

The parties have not cited and the Court has not found any precedent within the Tenth Circuit or guidance by any other circuit court with regard to this issue. The parties' arguments arise from a plethora of bankruptcy court opinions which address payment difficulties faced by counsel for Chapter 11 debtors-in-possession after conversion of cases to Chapter 7. Addressing similar facts, such courts have uniformly recognized that (1) able and competent counsel for a debtor-in-possession greatly enhances the likelihood of a successful Chapter 11 reorganization; (2) substantial professional fees and expenses may be incurred in the Chapter 11 process; (3) the posting of earned-on-receipt retainers is not favored; and (4) because of priorities among administrative expenses created by § 726(b), conversion of the case to Chapter 7 exposes a professional to substantial risk of non-payment. Treatment of prepetition attorney retainers can be roughly categorized into three approaches. WC & N relies upon the reasoning of the first and second approaches and the Trustee argues the third.

The first approach has been to treat a prepetition retainer as estate property in which counsel holds a prepetition security interest or lien arising under state law. This allows counsel to escape the effect of § 726(b) to the extent of the retainer. *See: In re North Bay Tractor, Inc.,* 191 B.R. 186, 187 (Bankr.N.D.Cal.1996); *In re Dees Logging, Inc.,* 158 B.R. 302, 306–07 (Bankr. S.D.Ga.1993); *In re Printing Dimensions, Inc.,* 153 B.R. 715 (Bankr.D.Md.1993); *In re Matthews,* 154 B.R. 673, 676 (Bankr. W.D.Tex.1993); *In re Viscount Furniture Corp.,* 133 B.R. 360, 365 (Bankr.N.D.Miss. 1991): *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989, 1000–02 (Bankr.N.D.Ill. 1990); *In re K & R Mining, Inc.,* 105 B.R.

394, 397 (Bankr.N.D.Ohio 1989); *In re Burnside Steel Foundry Co.,* 90 B.R. 942, 944 (Bankr.N.D.Ill.1988). These decisions are premised upon Judge Ginsberg's reasoning in *Burnside:*

> [T]he typical retainer paid to a debtor's attorney in a Chapter 11 case is intended to secure future payment of attorney's fees awarded by the Court. In the event the Court orders such an award, and the debtor does not have the cash to pay the award, the retainer insures payment. If the case fails and is converted to Chapter 7, the retainer enables the debtor's attorney to avoid the subordination of the Chapter 11 expenses of administration to those incurred in administering the Chapter 7 estate mandated by section 726(b) of the Bankruptcy Code.

> The reason why this result obtains is Simple. The debtor's attorney who receives a prepetition retainer to insure payment of fees to be earned in the Chapter 11 case (or post petition retainer authorized by court order) becomes a secured creditor, secured by a possessor, interest in cash.... There is nothing theoretically different between the attorney who receives a retainer against future fees and a landlord who takes a cash security deposit to secure the payment of future rent. The reason that the retainer succeeds in avoiding the subordination requirements of section 726(b) is that section 726 only affects distribution priorities among holders of unsecured claims, and an attorney with the retainer is, to the extent of the retainer, the holder of a secured claim. Of course, there is nothing *per se* wrong with a debtor's attorney taking security for fees. *Burnside* at 944.

The second approach has been to treat retained funds as property of the estate held subject to a trust in favor of the attorney in order to compensate him/her for services to be rendered during the Chapter 11 phase of the case. *See: In re Kinderhaus Corp.,* 58 B.R. 94, 97 (Bankr.D.Minn.1986). The trust funds are not ordinarily available as a source of payment for other administrative expense

claims under 11 U.S.C. § 503(b) except as to surplus funds remaining after full and final compensation has been allowed or in the event the trust is set aside for cause such as "overreaching or bad faith on the part of a debtor's attorney." *Kinderhaus,* 58 B.R. at 97.

Finally, some courts acknowledge sympathy for the plight of counsel for a debtor-in-possession but find no cognizable interest in the retained funds which allows counsel to be preferred over other administrative claimants. *In re Automobile Warranty Corp.,* 138 B.R. 72, 84 (Bankr.D.Colo.1991) (fees allowed but draw against prepetition retainer not authorized); *In re Rittenhouse,* 76 B.R. 610 (Bankr.S.D.Ohio 1987):

> While the court is sympathetic with counsel for the Chapter 11 debtor-in-possession and efforts made to accomplish a reorganization, the relief requested by such attorney is proscribed by the provisions of 11 U.S.C. § 726(b). When the result of the liquidation under Chapter 7 is completed, the court will review the application for fees of the attorney for the former debtors in possession in its priority position which is subordinate to the administrative expenses of the Chapter 7 case. *Rittenhouse* at 611, 612.

The rationale behind this position is best summarized in *Matz v. Hoseman,* 197 B.R. 635 (N.D.Ill.1996). Although *Matz* dealt with disgorgement of attorney fees after conversion, the court directly confronted the policy arguments which have been presented by WC & N:

> Finally, the Appellants argue that if professional fees such as theirs are subject to disgorgement, then high quality attorneys and accountants will decline to work in the bankruptcy area for fear of not being compensated. However, this argument ignores the fact that professionals engaged in the bankruptcy field are presumed to have knowledge of the priority scheme of

§ 726(0), and therefore are on notice of the potential for disgorgement should the estate be unable to pay all of its administrative expenses. (Citations omitted.) In other words, "[p]rofessionals seeking compensation from the bankruptcy estate do so at the risk that the estate will not have sufficient funds to satisfy their claims. To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not mandated by the Code." (Citations omitted.) ... Contrary to the appellants' assumptions about the effect of disgorgement on the market for bankruptcy professionals, disgorgement is already a part of the bankruptcy landscape and has been adequately accounted for by professionals. 197 B.R. at 640.

■ This Court is sympathetic to the risk that professionals who serve a Chapter 11 debtor-in-possession undertake and the potential loss they may suffer in the event of conversion. Were it a matter of judicial discretion, the Court would prefer to see WC & N paid promptly for the good services it has rendered. However, WC & N's rights in the retained funds are not the subject of judicial discretion nor are the affected by public policy considerations. WC & N's prepetition interest in the retained funds, if any, is determined by state law. WC & N's postpetition interest in the retained funds, if any, is determined by bankruptcy law.

### 1. WC & N holds no prepetition lien in the retained funds.

■ The validity and extent of an attorney's lien in bankruptcy is determined by state law. *In re Life Imaging Corp.,* 31 B.R. 101, 102 (Bankr.D.Colo.1983). Under Colorado law there is no common law attorney's lien and no lien exists except as created by statute.[1] *Gaudio v. Donaldson (In re Forrest A. Heath Co.),* 159 F.Supp. 632, 636

---

1. Based on the Burnside reasoning, WC & N suggests that it holds a security interest created in accordance with the Colorado Uniform Commercial Code. Neither Colorado law nor opinions of federal courts applying Colorado law

discuss consensual liens between attorneys and clients arising under the Colorado Uniform Commercial Code (U.C.C.). Likely this is so because Article 9 (Secured Transactions) of the U.C.C. does *not* apply if another statute or other rule of

(D.Colo.1958), *aff'd sub. norm, Donaldson v. Gaudio,* 260 F.2d 333, 335 (10th Cir.1958); *In re Rosenberg,* 690 P.2d 1293, 1295 (Colo. Ct.App.1984).

■ Attorney's liens are created and governed by two Colorado statutes, Colo.Rev. Stat. § 12–5–119 and § 12–5–120.[2] In combination, these statutes create two distinct classes of attorney's liens. A general, possessory, or retaining lien attaches to all papers, books, documents, securities and money coming into an attorney's possession in the course of his professional employment. A special, particular or charging lien entitles an attorney to be paid his fees and disbursements out of the judgment obtained as a result of his service and skill. *Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709, 710 (1933). The retaining lien is the type we are concerned with in this case.[3]

■ A retaining lien is not prospective. The lien attaches only after an attorney has completed compensable work. *People ex rel. MacFarlane v. Harthun,* 195 Colo. 38, 581 P.2d 716, 718 (1978). For an attorney to have a retaining lien, the client must owe the attorney fees or expenses. *People ex rel. Goldberg v. Gordon,* 199 Colo. 296, 607 P.2d 995, 997 (1980). If fees are in dispute, the retaining lien continues until the amount owed is determined. *Jenkins v. Weinshienk,* 670 F.2d 915 (10th Cir.1982). By logical inference if no fees are owed, no lien exists. Indeed, attorneys have an ethical duty to pay over client funds upon request to the extent that the, have not been earned. *See People v. Gregory,* 797 P.2d 42 (Colo.1990); *People v. Nichols,* 796 P.2d 966 (Colo.1990); *People v. Franks,* 791 P.2d 1 (Colo.1990). In practical terms, an attorney has a retaining lien

---

law creates a lien/or services or materials. Colo. Rev.Stat. § 4–9–104(c) Because Colorado already provides for a statutory, attorney's lien, a U.C.C. security interest is not available to an attorney providing legal services to a client.

Prior to adoption of the U.C.C., however, Colorado case law recognized the creation of a consensual lien between attorney and client under some circumstances. *See Nichols v. Orr,* 63 Colo. 333, 166 P. 561 (1917); *Bell v. Board of Com'rs of Lake County,* 26 Colo.App. 192, 141 P. 861, 864 (1914). Assuming a consensual lien between attorney and client is permissible, arising under the U.C.C. or not, its creation requires a security agreement or intent to create a lien. No evidence of either has been presented.

2. **§ 12–5–119. Attorney's lien—notice of claim filed.** All attorneys-and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditors, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a

first lien on such demand in suit or on such judgment for the amount of his fees. Such notice of lien shall not be presented in any manner to the jury in the case in which the same is filed. Such lien may be enforced by the proper civil action.

**§ 12–5–120. Other property to which lien attaches.** An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment and upon money due to his client in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

3. In *Collins* the Colorado Supreme Court expressed regret that the statutory sections did not separate the two classes of liens as clearly as might be desired. This has led to some confusion in the use of the terms "retaining lien" and "charging lien." For example, contrary to the meaning given these terms in *Collins* and numerous federal court opinions, Colorado cases of *In re Marriage of Mann,* 697 P.2d 778 (Colo.Ct.App. 1984) and *In re Marriage of Smith,* 687 P.2d 519, 520 (Colo.Ct.App.1984), refer to the retaining lien as that asserted against papers of the client and the charging lien as the lien asserted against money, property choses in action and other claims or demands in the attorney's possession. Consistent with Collins and the applicable federal precedent, the term "retaining lien" means a possessory lien while the charging lien refers to a lien on a judgment in a particular case. *Electronic Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.),* 916 F.2d 1502, 1505 (10th Cir.1990); *Jenkins v. Weinshienk, supra; Bender & Treece, P.C. v. Storage Technology Corp. (In re Storage Technology, Corp.),* 45 B.R. 363,

on retained funds to the extent of and for so long as fees and expenses are owed by the client.

According to the retention application and accompanying affidavit of Jeffrey A. Weinman, the Debtor was not indebted to WC & N at the time of the bankruptcy filing. Both recite that WC & N was disinterested as provided in 11 U.S.C. § 101(14). To be disinterested, WC & N could not be a creditor. Indeed, the subject Application reflects that prepetition fees and expenses were paid from the retainer prior to the filing, presumably so that no balance was owed to WC & N on the date of the bankruptcy filing. Since no prepetition fees were owed at the time of the bankruptcy filing, under Colorado law there was no retaining lien.

■ This scenario is not unusual. In order to be retained as a professional for a Chapter 11 debtor-in-possession. an applicant must be disinterested. 11 U.S.C. 327(a). The definition of disinterested person in 11 U.S.C. 101(14) specifically requires that the person not be a creditor. Thus, to be disinterested an attorney cannot be owed money by a debtor for prepetition services. *U.S. Trustee v. Price Waterhouse,* 19 F.3d 138, 140–42 (3rd Cir.1994); *In re Roberts,* 75 B.R. 402, 408–09 (D.Utah 1987) (*en banc*). On the eve of the bankruptcy filing many counsel draw from a retainer sufficient funds to pay all prepetition fees and expenses in order to create disinterested status. Other counsel waive the amount owed for prepetition services in order to accomplish the same objective.

■ Attorneys who desire to represent a debtor-in-possession in a Chapter 11 case are faced with a dilemma. They must choose between holding a prepetition lien against retained funds and representing the debtor-in-possession. This distinction is

missing in the *Burnside* analysis. Although an attorney may hold a prepetition security interest in retained funds just as a landlord holds a security deposit, the attorney's status as a secured creditor precludes employment as a professional under § 327(a) for failure to satisfy the "disinterested" requirement. *In re Pierce,* 809 F.2d 1356, 1362–63 (8th Cir. 1987). Worse yet, assertion of a prepetition security interest after employment has been approved may result in a finding that counsel was not disinterested, thereby jeopardizing any right to postpetition compensation. 11 U.S.C. § 328(c).

### 2. WC & N has no postpetition lien in the retained funds.

■ Alternatively, WC & N argues that the Court's Order approving the retainer authorized a lien in the retained funds. This argument has no merit.[4]

■ Although used colloquially to describe a source of payment, the term "retainer" is not synonymous with a lien or security interest. BLACKS LAW DICTIONARY, 6th Ed., defines "retainer" as the act of employing an attorney. A "retainer agreement" sets forth the nature of services to be performed, and arrangements regarding costs, expenses and related matters. A "retaining fee" is defined as the fee given to counsel upon engagement of his/her services. The Colorado Rules of Professional Conduct and attorney lien statutes do not utilize the term "retainer," but instead refer to funds or monies in the possession of the attorney. The Bankruptcy Code refers to employment of counsel "on a retainer" in § 328(a), but does not define the concept. Consequently, the term "retainer" can refer to a wide variety of different payment arrangements, only some of which are permissible in bankruptcy.[4] Without particular defining terms, a "retainer" means nothing more than a depos-

---

364 (D.Colo.1985); *In re Forrest A. Heath Co., supra; Ranes v. Molen (In re Ranes),* 31 B.R. 70, 72 (Bankr.D.Colo.1983); *In re Campbell,* 26 B.R. 145, 146 (Bankr.D.Colo.1983).

**4.** Different types of retainers in bankruptcy cases include classic, advance fee, evergreen, earned-on-receipt and security retainers. *See Commonwealth of Pennsylvania v. Cunningham and Cher-*

*nicoff, P.C. (In re Pannebaker Custom Cabinet Corp.),* 198 B.R. 453, 459 (Bankr.M.D.Pa.1996); *In re NBI, Inc.,* 129 B.R. 212 (Bankr.D.Colo. 1991). Earned-on-receipt and evergreen retainers have been disallowed. *In re Fitzsimmons Trucking, Inc.,* 124 B.R. 556, 559 (Bankr.D.Minn. 1991); *In re Pacific Forest Industries,* 95 B.R. 740 (Bankr.C.D.Cal.1989); *NBI, supra* at 222.

it of money given to an attorney at the time of his/her employment.[5]

The retention application stated that $25,000.00 had been paid to WC & N as a retainer, but it did not describe the terms of nor refer to any retainer agreement. Thus, the Court treated it as part of the disclosure of prepetition compensation arrangements required by § 329 and Fed. R. Bankr.P.2016. *Turner v. Davis (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir.1993); *Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1267 (10th Cir.1991). Notice under L.B.R. 202 was required to advise creditors that estate property was being held by WC & N. The Order approving the retainer did not approve a lien in the funds because none had been requested or disclosed. The Order simply authorized WC & N to hold funds which were property of the estate during the Chapter 11 case. No subsequent Order has ever been requested or issued authorizing the creation of a postpetition lien in the retained funds.

Since no lien in the retained funds has ever been authorized, the question becomes whether Colorado's retaining lien in the retained funds attached automatically during the bankruptcy case. If Colorado law applies postpetition, WC & N would automatically acquire a lien on all estate property in its possession as it provided postpetition services.

▪ The disinterestedness requirement, although continuing, does not preclude a professional from asserting postpetition claims. This is because the definition of "creditor" is limited to those who hold claims arising before or at the time of the bankruptcy filing or claims arising under §§ 348(d), 502(f), (g), (h) or (i). 11 U.S.C. § 101(10). The Code anticipates postpetition administrative claims of professionals, requires allowance and pro-

vides for their payment prior to payment of prepetition claims. But the Code is silent as to whether administrative expense claims can be secured with a postpetition lien, particularly a retaining lien arising automatically under state law.

▪ Considering the Code as a whole and the policies behind it, this Court is convinced that recognition of the Colorado retaining lien for postpetition services rendered to a trustee or debtor-in-possession is incompatible with and superseded by bankruptcy law. Generally, the Code segregates prepetition from postpetition claims and provides for postpetition marshaling of assets which are then equitably distributed to both groups according to expressly stated priorities. Payment of administrative claims is given a higher priority than prepetition claims to encourage professionals and others to assist in the liquidation or reorganization process. Except in § 726(b), there is no hint that Congress intended some administrative expense claims to be treated more favorably than others. Secret, automatic liens which prime other administrative expense claims are inconsistent with the Code's elaborate priority scheme and with the requirement that creditors be given notice of and an opportunity to object to the creation of postpetition liens under §§ 363 or 364.

Recognition of a postpetition retaining lien for counsel who represents a trustee or debtor-in-possession is also inconsistent with specific Code provisions. The automatic stay proscribes postpetition acts to create, perfect or enforce any lien against property of the estate. 11 U.S.C. § 362(a)(4). Since Colorado's retaining lien requires continuing possession, one wonders how counsel could assert a postpetition lien perfected by possession. Counsel could not release retained funds or other property of the estate without losing the lien, but retention of the estate

---

**5.** The common belief that a retainer secures payment for legal services likely arises from Colora-

do's automatic retaining lien.

property would make it unavailable for general administration and would pit counsel's interest against the estate. Holding an interest materially adverse to the estate or creditors would then destroy counsel's status as a disinterested person[6] which in turn would jeopardize counsel's employment and compensation. *See* 11 U.S.C. § 328(c).

The Colorado retaining lien is also incompatible with the provisions of §§ 328, 329, 330 and 331 which govern attorneys' relationships with a debtor or estate. Under Colorado law, the retaining lien arises as compensable services are rendered, but compensability of services by an attorney retained under § 327 is not determined until final allowance under § 330. When would the retaining lien attach? Would the scope of the lien be subject to reduction if the fees were ultimately disallowed? Would the lien be extinguished by interim payment? The possibility of recoupment of fees or restructuring of fee arrangements under §§ 328(a), 329 and 330 or § 726(b) is fundamentally inconsistent with recognition of a lien. Even if a postpetition retaining lien were recognized, these Bankruptcy Code provisions would render it virtually valueless.

Finally, there is no need to recognize a retaining lien to protect attorneys. The purpose of the Colorado retaining lien is to assure counsel a source of payment free from claims by the client or client's creditors. Such protection is not necessary in a bankruptcy context because estate assets are subject to court supervision, the Code creates a priority scheme for payment and carefully regulates the relations between counsel and trustees or debtors-in-possession.

█ If general bankruptcy provisions provide inadequate assurance of payment, a postpetition lien can be authorized in compliance with § 364(c) and Fed. R. Bankr.P. 4001 and 9014. Read together, these provisions require notice and a hearing, a showing that unsecured credit cannot be obtained and that secured credit is beneficial to the estate, *In re American Resources Management Corp.*, 51 B.R. 713, 721 (Bankr.D.Utah 1985). This is how other postpetition creditors obtain security interests. There is no apparent reason why counsel cannot and should not be required to comply with § 364 as well.

█ Courts have authorized liens to secure payment of counsel fees in cases where the bankruptcy case is unusually large, exceptionally large fees are expected, and the court is convinced that forcing counsel to wait an extended period of time for payment would result in undue hardship. *U.S. Trustee v. Knudsen Corp. (In re Knudsen Corp.),* 84 B.R. 668, 672–73 (9th Cir. BAP 1988). In evaluating whether or not a postpetition lien should be granted to an attorney, courts have considered the nature of the ongoing business operation, the ability of a debtor to reorganize, the amount and reasonableness of the retainer, reputation of debtor's counsel and the ability of debtor's counsel to disgorge payments, if necessary. *In re W & W Protection Agency,* 200 B.R. 615 (Bankr. S.D.Ohio 1996); *In re Jefferson Business Center Assoc.,* 135 B.R. 676, 679 (Bankr. D.Colo.1992). Because any postpetition lien diminishes the assets available to pay administrative expense claims and unsecured creditors, its creation must be considered on a case-by-case basis, cautiously, carefully and only when necessary to enhance the likelihood of a successful reorganization.

### 3. The retained funds are not subject to a trust in favor of WC & N.

█ Just as this Court is not free to rearrange the Code's priorities for payment of creditors, it is not free to create interests in property not otherwise recognized at law. For a trust relationship to exist there must evidence of (1) capacity to create a trust; (2) an intention to create a trust; (3) a declaration of trust or a present disposition of the res; (4) an identifiable trust res; (5) a trust-

---

**6.** 11 U.S.C. § 101(14)(E).

ee; and (6) identifiable beneficiaries. *Connolly v. Baum (In re Baum)*, 22 F.3d 1014, 1018 (10th Cir.1994). No evidence establishing these elements has been presented.

## V. CONCLUSION

To the extent that WC & N holds no lien and the retained funds are not subject to a trust agreement benefitting WC & N, what right then does WC & N have in the retained funds? The answer is none. The funds held by WC & N are property of the estate. Approval of the retainer allowed WC & N to hold estate property in its trust account. So long as no other claim was made upon such funds during the Chapter 11 case, such funds were available to WC & N for payment of allowed fees on an interim basis. By holding a retainer WC & N was not dependent upon daily operations of the Debtor for interim payment of fees. Instead, it could be paid from a limited, but ready source of cash. Holding funds may be of small benefit to counsel for a Chapter 11 debtor-in-possession, but it is superior to having an allowed administrative claim against an estate which has no cash to pay.

Attorneys who represent debtors-in-possession stand in a precarious position with regard to collection of fees, especially if the case converts to Chapter 7. Although Colorado law grants an attorney a lien in funds of a client, such attorney cannot simultaneously hold a prepetition security interest and represent the Chapter 11 debtor-in-possession. In the absence of a lien or other cognizable interest in the retained funds, a prepetition retainer is simply property of the estate held by the professional. If the case converts from Chapter 11 to Chapter 7, the retained funds are subject to administration by the Chapter 7 trustee in accordance with the priorities of § 726(b). Recognition of a postpetition retaining lien is not consistent with bankruptcy law. To obtain a postpetition lien, the attorney must comply with 11 U.S.C. § 364(c) and Rule 4001.

IT IS THEREFORE ORDERED that:

1. Pursuant to 11 U.S.C. §§ 330 and 503(b), WC & N is finally **ALLOWED** fees in the amount of § 25,621.50 and expenses in the amount of § 2,979.79 for a total Chapter 11 administrative expense claim of $28,601.29.

2. WC & N shall account to the Trustee for all funds of the estate retained in a trust account in connection with this case. Such funds are property of the estate in which WC & N holds no lien or equitable interest.

3. WC & N may continue to retain such funds in an interest bearing account pending further administration of this bankruptcy estate, but no payment shall be made to WC & N from such funds absent certification to the Court by the Trustee that sufficient assets exist to pay all administrative claims of equal or senior priority.