**In re Mac and Maryse TROUNG, Debtor.**

**No. 00–37093 (NLW).**

United States Bankruptcy Court, D. New Jersey.

Feb. 27, 2001.

Daniel J. Yablonsky, Law Office of Daniel J. Yablonsky, LLC, Hawthorn, NJ, for debtors.

Gail B. Cooperman, Office of U.S. Trustee, Newark, NJ, for U.S. Trustee.

265

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

The debtors in this Chapter 11 case have filed an application to retain bankruptcy counsel and to pay the firm a post-petition retainer of $15,000. A limited objection was filed by the Office of the United States Trustee. The United States Trustee contends that prior to the allowance of a post-petition retainer a hearing must be held at which counsel must demonstrate that he has met the test established in *In re Knudsen Corp.*, 84 B.R. 668 (9th Cir. BAP 1988). As set forth below, the Court finds that counsel must demonstrate that the circumstances of the case warrant authorization of a post-petition retainer.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

The underpinnings of this case stem from events that took place beginning in the 1970s, and an abbreviated description of those facts is necessary to understand the posture and complexity of the present case.

In the late 1970s, the debtor, Mac Truong ("Truong") was retained by Vishipco Lines ("Vishipco") and Dai Nam Hang Hai Cong-ty Vishipco Line of Vietnam ("Dai Nam") to recover funds from various entities, including the government of the United States and various non-Vietnamese banks. Truong was appointed agent and attorney-in-fact by Tran Dinh Truong ("Tran"), the general director of both Vishipco and Dai Nam. Some time after the fall of South Vietnam (April 30, 1975), Vishipco and Dai Nam, as well as several related entities were nationalized by the government of Vietnam and eventually became known as Vitranschart. By reason of the

nationalization, Vitranschart claims that Tran was without authority to retain Truong to collect the funds due to Vishipco and Dai Nam.

Although Truong was successful in his collection efforts, the proceeds could not be disbursed as they were restricted pursuant to the Trading with the Enemy Act. In 1986, with the approval of the U.S. Treasury, Truong established accounts at Merrill Lynch in the name of Vishipco and Dai Nam. The Merrill Lynch accounts remained blocked until 1995, when normal relations were restored between the United States and the Democratic Republic of Vietnam. The unblocking of the accounts begins part of the litigation that led to the bankruptcy. Truong became embroiled in a dispute with Tran over Truong's release and discharge as agent and the payment of Truong's commissions. During the dispute Truong transferred the funds in the Merrill Lynch accounts (approximately $345,000) into his personal accounts at Charles Schwab & Company, Inc. ("Schwab"). What then followed was a series of litigations in the Supreme Court of the State of New York, New York County, and the United States District Court for the Southern District of New York among Truong, Tran, Vishipco, Dai Nam, and Vitranschart, with Schwab joined as the stakeholder. Truong, Tran, Vishipco, Dai Nam and Vitranschart all claimed rights in the funds held by Schwab.

Also, while the litigation was pending as to the ownership and disposition of the funds in Schwab accounts, Truong was engaged in bitter litigation with the landlord, Broadwhite Associates ("Broadwhite"), which owned the premises from which Truong conducted his law practice.

When the Truongs filed for their Chapter 13 bankruptcy case on July 12, 2000, adverse decisions had been entered against Truong in both matters. The Truongs filed their case pro se, and the lack of bankruptcy experience was evident from the outset as they were unquestionably ineligible for Chapter 13 relief.[1] Approximately a month later, in a burst of legal activity, Truong moved to convert his case to Chapter 11, removed the New York litigations to the bankruptcy court, and filed various motions aimed at his opponents. All of the foregoing pleadings contained varying degrees of procedural and substantive deficiencies, evidencing Truong's lack of experience in bankruptcy.

After numerous hearings and countless hours of the Court's time, it became apparent to the Court that a feasible plan of reorganization was not attainable as long as the debtors continued to appear pro se. The Court then directed the debtors to retain counsel to represent them in their case. It further advised the debtors that if they did not timely retain counsel, the Court would dismiss their case. On January 12, 2001, the debtors filed an application to employ counsel. With their application, the debtors included a retainer agreement by which counsel sought a retainer in the amount of $15,000. Subsequently, the debtors submitted three checks to counsel, each in the amount of $5000. One check was drawn from Truong's personal bank account. The other two checks were from The Guardian Life Insurance Company of America and were obtained by drawing down on the cash surrender value of Truong's life insurance policies. The checks have not yet been deposited by counsel.

The Office of the United States Trustee (the "UST") filed a limited objection to the payment of a post-petition retainer. As requested by the UST, the Court scheduled a hearing to consider whether to authorize the retainer. No other objections were filed.

1. The claims against the Truongs were well in excess of the debt limitations for Chapter 13 debtors that are set forth in 11 U.S.C. § 109(e). For example, Vishipco and Dai Nam filed proofs of claim against the Truongs for $4,500,000.00 each.

## DISCUSSION

The UST grounds her objection on the factors enumerated in *In re Knudsen Corporation*, 84 B.R. 668 (9th Cir. BAP 1988) for examination of the reasonableness of post-petition fee payment and application procedures. The UST argues that Truong's bankruptcy counsel must demonstrate compliance with those factors in order for this Court to approve his post-petition retainer.

In *Knudsen*, counsel sought authorization for the following procedure: Billing statements for compensation and reimbursement of expenses for the prior month were to be submitted to the debtors. If the debtors found the statements acceptable, they were to be promptly paid. At least ten days before the first interim payment were requested, each law firm was to file a schedule of rates with the bankruptcy court and serves it on the parties-in-interest. Within fifteen days following the end of each three month period, counsel was to file and serve on the parties-in-interest, an application for court approval of the statements filed during the three month period. If quarterly statements were not timely filed, the Debtors did not have to pay either law firm until the quarterly statements were approved by the bankruptcy court. *Knudsen*, 84 B.R. at 669–70.

In addressing the merits of the requested procedure, the B.A.P. first noted that Section 328(a) of the Bankruptcy Code grants bankruptcy courts the authority to employ professionals "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." *Knudsen*, 84 B.R. at 670. "Section 328(a) specifically states that a bankruptcy court may authorize a retainer as part of a compensation agreement... The critical factor is that the fees must not be finally allowed (i.e., they must be subject to repayment) until a detailed application is filed, an opportunity for objection has been provided, and the court has reviewed the application." *Id.*

The *Knudsen* court held that the payment procedure outlined above is permissible in certain rare circumstances where adequate safeguards are taken. *Id.* at 671. It determined that the following findings must be made for a court to authorize payment of fees prior to court approval:

1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

3. The court is satisfied that counsel can respond to any subsequent court disallowance of the fees already paid; and

4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Id.* at 672–673.

The *Knudsen* criteria have been widely followed. *See, e.g., In re Bennett Funding Group, Inc.*, 213 B.R. 227, 232–233 (Bankr.N.D.N.Y.1997); *In re W & W Protection Agency, Inc.*, 200 B.R. 615, 620–621 (Bankr.S.D.Ohio 1996); *In re Dandy Lion Inns of Am.*, 120 B.R. 1015, 1017–1018 (D.Neb.1990). Indeed, this Court has applied the criteria to large and complex cases to authorize payment to professionals. However, to the extent that the *Knudsen* criteria limits its applicability to large cases where waiting an extended period for payment creates hardship, the test is too restrictive for the broad range of retention terms permitted by Code § 328, which is restricted only by the reasonableness of the retention terms proposed by the applicant. Regardless of the size of the case, the bottom line consideration should be whether the terms of retention are fair; both to the professional whose retention is sought, as well as to the debtor and its creditors who must bear the expense.

The analysis provided by *In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676 (Bankr. D.Colo.1992) provides a more flexible and

better framework. In *Jefferson*, a debtor filed a request for court approval of a post-petition retainer against which its proposed counsel could draw monthly seventy-five percent of the fees and expenses for future services. The Court observed that "The provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical," and "[a] determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Court." *Id.* Furthermore, the Court recognized that "[s]uch a determination must be made on a case-by-case basis" and that the burden is on the applicant to prove that the terms of the retention are reasonable. *Id.* at 680 (citing *In re NBI, Inc.,* 129 B.R. 212, 219 (Bankr.D.Colo.1991)).

In determining whether to allow the post-petition retainer, the Court acknowledged the factors enumerated by *Knudsen* and also considered (1) the retainer's economic impact on the debtor's ongoing business operation; (2) the retainer's economic impact on the debtor's ability to reorganize; (3) the amount and reasonableness of the retainer; (4) the reputation of debtor's counsel; and (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should the Court determine that the fees paid to counsel are not justified. *Id.* The Court also noted that although post-petition retainers and the ability to draw against such retainers are granted in large bankruptcy cases, usually to large law firms, smaller law firms should not be treated any differently. *Id.* at 680. This Court finds these additional factors helpful for determining the reasonableness of any post-petition retainer. For that matter, the criteria stated by *Jefferson* apply equally well to procedures proposed for authorizing payment to professionals prior to court approval of fee applications.

The facts of this case meet the criteria set forth in *Jefferson*. First, most of the retainer was not taken out of the debtors' cash flow and does not affect the debtor's ability to pay post-petition expenses. Second, by retaining counsel, the debtors, who began their petition pro se, will gain the advice and guidance which will increase their prospect of reorganization. Third, the specific amount of the retainer is not extraordinary when balanced against the services which must be rendered. Fourth, it is clear from the examination of the record that while this case involves an individual debtor rather than a corporation, it has a level of complexity that demands experienced bankruptcy counsel. Proposed counsel is an experienced bankruptcy practitioner and in measuring facts of this case against the criteria set forth in *Jefferson*, the Court finds that the complexity of this case and the need for counsel to cure the deficiencies in the case and to devise a feasible plan of reorganization warrant the payment of a post-petition retainer. Finally, counsel is not requesting that he be permitted to draw against the retainer prior to allowance of compensation by the Court. Thus, the Court's ability to oversee payment of fees is fully preserved.

As a final consideration, this Court agrees with *Knudsen* that an applicant must provide notice and an opportunity to object to the proposed terms. In this jurisdiction that requirement can be met by compliance with Local Bankruptcy Rule 2014–1 which states:

"...an application for an order approving employment of a professional person shall be served upon the debtor, the trustee, the secured creditors, the official committees, and parties requesting notice of all proceedings. Any objection to such application shall be filed and served within 5 days of service of the application. A hearing may be conducted on the objection in the Court's discretion."

Additionally, an applicant who requests a post-petition retainer or some other payment procedure, should demonstrate in its application papers that the *Jefferson* fac-

tors have been met. If there is no objection, and the court finds the retention terms reasonable, the order can be entered without need of a hearing. If there is an objection, then a hearing can be scheduled.

Here, the debtors failed to serve all interested parties as required by L.B.R. 2014–1. Therefore, the Court will refrain from entering an order until proper notice procedures have been followed by the debtor pursuant to L.B.R. 2014–1(a).